UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **FREEDOM FROM RELIGION FOUNDATION, INC., JANE DOE, JOHN ROE, and JANE NOE** § § § § § § § § § § | CASE NO. 4:17-cv-881 |
| Plaintiffs, | |
| v. | |
| **Judge Wayne Mack** | |
| Defendant. | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST
FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Honorable Wayne Mack serves as a Justice of the Peace in Justice Court 1 of Montgomery County, Texas. Judge Mack has implemented a courtroom prayer practice during which a guest chaplain delivers a prayer to those assembled in the courtroom before the start of each court session. Plaintiffs object to this courtroom prayer practice as a violation of the Establishment Clause of the First Amendment. The Plaintiffs are three individuals directly affected by the Defendant's courtroom prayer practice and a non-profit membership organization devoted to the separation of church and state.

**I.     NATURE OF THE CLAIMS**

1. Plaintiffs seek a declaration under 28 U.S.C. §2201 that the Defendant has violated the Establishment Clause of the First Amendment through his implementation of an exclusively religious courtroom prayer practice.

2. Plaintiffs further request that the Court grant them injunctive relief under 28 U.S.C. §1343 and Fed. R. Civ. P. 65.

3. Plaintiffs bring this action pursuant to 42 U.S.C. §1983 to redress the deprivation of their constitutional rights, committed under the color of state law by the Defendant, who is a

government official.

## II. JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

5. The Court also has the authority to order declaratory relief under 28 U.S.C. §2201.

6. The Court further has the authority to grant injunctive relief under 28 U.S.C. §1343.

7. Venue is appropriate in the District Court for the Southern District of Texas pursuant to 28 U.S.C. §1391(e). The events giving rise to this complaint occurred predominantly or entirely within the Southern District of Texas.

## III. PARTIES

8. Plaintiff Freedom From Religion Foundation, Inc. ("FFRF"), is a non-profit membership organization that advocates for the separation of state and church and educates on matters of nontheism. FFRF has more than 27,000 members, with members in every state of the United States, including more than 1,200 members living in the State of Texas.

9. Plaintiff Jane Doe is a licensed attorney whose place of business is located within Montgomery County. Ms. Doe has appeared before Judge Mack on at least four separate occasions, with separate clients, since Judge Mack instituted his courtroom prayer practice. Ms. Doe is a Christian who objects to a government official telling her when or how to pray. When appearing before Judge Mack, Ms. Doe has always remained in the courtroom during the prayers. She believes that it would be a disservice to her clients to demonstrate her objection to the prayers by leaving the courtroom. She believes that registering her objection publicly would bias Judge Mack against her and her clients, and would injure her ability to attract new clients.

Ms. Doe is also concerned that the courtroom prayer practice will make her clients feel uncomfortable. Because of the courtroom prayer practice, Ms. Doe now tries to avoid appearing in Judge Mack's courtroom, although she has appeared before him as recently as February 2017, and would appear before him again if a case required it.

10. Plaintiff John Roe is a self-employed attorney who regularly works within Montgomery County and regularly represents clients before Judge Mack. Mr. Roe is religiously unaffiliated and objects to being subjected to religious prayers in Judge Mack's courtroom. Although government-organized prayer violates Mr. Roe's sincerely held beliefs, he feels that leaving the courtroom during the prayers would jeopardize his ability to represent his clients before Judge Mack. Mr. Roe believes that publicly registering his objection to the courtroom prayer practice would jeopardize his business, insofar as it would bias Judge Mack against him and his clients.

11. Plaintiff Jane Noe is a Montgomery County resident who has appeared before Judge Mack on official business. Ms. Noe felt coerced to remain in the courtroom during the opening prayer, lest her absence from the courtroom bias the judge against her. Ms. Noe is an atheist. She does not believe in any supernatural higher power and being subjected to religious prayer by a government official violates her sincerely held beliefs. As she is still a Montgomery County resident, there is a reasonable chance that she will be compelled to appear in Judge Mack's courtroom again in the future. Ms. Noe is also a member of the Freedom From Religion Foundation.

12. All individual plaintiffs have been given pseudonyms for the purposes of this filing. In their Motion for Leave to Proceed Using Pseudonyms and for Protective Order, filed

contemporaneously with this complaint, Plaintiffs ask the court to allow them to proceed pseudonymously for the remainder of this case.

13. The Defendant, Judge Wayne Mack, is a Justice of the Peace for Precinct 1 in Montgomery County. Judge Mack is the presiding officer of Justice Court 1 of Montgomery County. He has jurisdiction over minor misdemeanor offenses (Class C) and civil matters where the amount in controversy does not exceed $10,000. He is responsible for devising and implementing the prayer practice described below.

## IV. JUDGE MACK HAS A HISTORY OF ENDORSING RELIGION WHILE ACTING IN HIS OFFICIAL CAPACITY

14. Wayne Mack graduated from the Jackson College of Ministries, where he majored in Theology.

15. During his 2014 Republican primary campaign for Justice of the Peace of Montgomery County, Wayne Mack ran on a platform of reinstituting religious values within the office, in part through implementing a Chaplaincy Program to assist the Justice of the Peace.

16. Judge Mack was sworn in as Justice of the Peace on May 1, 2014, and established a volunteer chaplaincy program within his first few weeks of office.

17. On October 23, 2014, Judge Mack held his first annual Faith & Freedom Prayer Breakfast, which doubled as a fundraiser for his office. At the 2014 prayer breakfast, Judge Mack noted the importance of maintaining impartiality as a judge, but then remarked, "there is no reason as an elected official that I have to be ashamed to declare to this crowd and anybody listening that as the Justice of the Peace I *will* bring the Prince of Peace to work with me every day." Judge Mack's campaign website selected this remark for a highlight reel of the prayer breakfast.

18. Judge Mack again organized and conducted a prayer breakfast on October 22, 2015, with keynote speaker Pastor Don Piper, who authored a book about visiting Heaven and meeting the Christian god. Judge Mack hosted his third annual prayer breakfast on October 13, 2016.

19. Each prayer breakfast has featured prayers of an exclusively Christian nature.

### V.    JUDGE MACK'S ORIGINAL COURTROOM PRAYER PRACTICE

20. Shortly after assuming the office of Justice of the Peace on May 1, 2014, Judge Mack implemented the practice of opening each court session with a prayer delivered by a guest chaplain.

21. In August of 2014, plaintiff Jane Noe appeared in Judge Mack's courtroom on official business and witnessed the prayer practice.

22. The August 2014 prayer practice occurred as follows: After entering the courtroom, Judge Mack announced that everyone should remain standing for a prayer.

23. He then stated, "If any of you are offended by that you can leave into the hallway and your case will not be affected."

24. Judge Mack then spent a few minutes describing his new volunteer chaplaincy program.

25. He then introduced the day's "visiting pastor" by outlining his credentials and announcing which church he was from and where it was located.

26. The guest chaplain then stood and read from the Christian Bible for five to eight minutes, directing the reading to those present in the courtroom.

27. During the sermon, Judge Mack appeared to study how those in attendance reacted to the sermon, whether they listened or expressed indifference.

28. After the five- to eight-minute sermon, the guest chaplain asked everyone to bow their heads for a prayer. During the prayer, Judge Mack did not bow his head, but observed those in the courtroom.

29. During the sermon and prayer, Ms. Noe felt that the outcome of her case would be affected by how she chose to react. She did not leave after the invitation to do so out of fear that her actions would prejudice Judge Mack against her. She felt compelled by government authority to demonstrate obeisance to someone else's religion.

30. Once the prayer had concluded, everyone in the courtroom was instructed to remain standing during a recitation of the Pledge of Allegiance and the Texas Pledge of Allegiance to the state flag. Judge Mack then took his seat and the docket was called.

31. In September 2014, attorney Jane Doe appeared in Judge Mack's courtroom in her professional capacity. The prayer practice was largely the same as reported by Jane Noe: Judge Mack entered the courtroom, introduced a guest chaplain, and then stood by while the chaplain led a prayer. Only the content of the prayers and identities of the chaplains differed.

32. Ms. Doe likewise felt the judge was using his courtroom authority to inflict prayer on her and the others in the audience, and that to conspicuously absent herself would prejudice her case and stigmatize her and her clients.

## VI.    INITIAL REACTION TO JUDGE MACK'S COURTROOM PRAYERS

33. On September 18, 2014, plaintiff FFRF sent a letter of complaint to Judge Mack, requesting that he voluntarily cease his courtroom prayer practice. FFRF's letter gave an example of how the prayers have created the appearance of bias within Judge Mack's courtroom and provided legal citations showing why the practice violated the Establishment Clause of the

First Amendment. *See* FFRF's complaint to the Texas State Commission on Judicial Conduct, Exhibit A at 4–5. FFRF did not receive a written response to its letter.

34. On October 10, 2014, Judge Mack addressed an open letter to "Pastors & People of Faith" in which he called for congregations to join him at a Prayer Breakfast on October 23. He wrote in part, "Since we started our Chaplaincy Program and prayer in the opening ceremonies of our Court, we have come under national and local attack from those that believe that God & Faith has no place in public lives and service." He continued, "I want to make a statement to show those that feel what we are doing is unacceptable . . . that God has a place in all aspects of our lives and public service . . . ." *See* Exhibit A at 6.

35. Following this announcement, on October 17, 2014, FFRF filed a complaint with the Texas State Commission on Judicial Conduct. *See* Exhibit A. The State Commission's investigation of the courtroom prayers lasted over a year, during which time Judge Mack revised the practice, as described in section VII, below.

36. Ultimately, in November 2015, the State Commission on Judicial Conduct declined to issue any form of discipline against Judge Mack, citing its lack of authority to decide whether the prayer practice violates the Establishment Clause. The Commission did, however, strongly caution Judge Mack to end his current prayer practice or substitute an opening practice consistent "with the perfunctory acknowledgement of religion that is accepted and employed by the United States Supreme Court and the Texas Supreme Court."

### VII. JUDGE MACK'S REVISED COURTROOM PRAYER PRACTICE

37. By spring 2015, Judge Mack had revised his courtroom prayer practice. The revised prayer practice, as described below, may vary slightly day-to-day, but has remained largely consistent ever since.

38. After attorneys have indicated their presence in the courtroom and after the docket has been called, but before Judge Mack has entered, the bailiff calls for the attention of those assembled in the courtroom and gives a brief introductory statement. The introduction describes the prayer practice. It is also meant to include a statement that those opposed to prayer may leave the courtroom without affecting the outcome of their cases, although the invitation to leave has not been consistently included.

39. After the introduction by the bailiff, Judge Mack enters the courtroom. While everyone remains standing, Judge Mack talks briefly about his chaplaincy program and introduces a religious leader from the program, who wears an official badge issued by Judge Mack.

40. After Judge Mack's introduction, the chaplain leads a prayer, sometimes preceded by a short sermon. The prayers and sermons are directed to those in attendance in the courtroom and everyone present is asked to participate, or show obeisance, by bowing their heads.

41. After the chaplain-led prayer, attendees are encouraged to recite the Pledge of Allegiance and the Texas Pledge of Allegiance to the state flag.

42. The bailiff then announces the rules of the court and the first case is called.

43. During the bailiff's introduction, the chaplain-led prayer, and the courtroom business that follows, the courtroom doors remain magnetically locked. To exit, a person must push a button and reentry can only be granted by someone already inside the courtroom. Those seeking reentry after the prayers would need to draw attention to themselves by knocking on the courtroom doors. Because Judge Mack enters the courtroom after the bailiff's introduction, he has ample opportunity to note who has entered his courtroom after the prayer.

44. Judge Mack is the only Justice of the Peace in Montgomery County, or indeed, any surrounding county, who locks his courtroom doors. Judge Mack began locking his courtroom doors at approximately the same time he revised his courtroom prayer practice.

45. Because the docket has already been called prior to the bailiff's introduction to the prayer, all attorneys present in the courtroom have been logged. Judge Mack therefore has access to a record of those attorneys present in the courtroom prior to the bailiff's announcement.

46. Both plaintiffs Jane Doe and John Roe have been present in Judge Mack's courtroom during this revised prayer ritual.

47. John Roe recently attended Judge Mack's court in December 2016, when he observed the courtroom prayer practice along with about thirty *pro se* litigants and ten attorneys. Not a single person left the courtroom after the bailiff announced the prayer and stated that people were free to leave if they did not want to participate.

48. Jane Doe most recently attended Judge Mack's court in February 2017. About twenty people were in the courtroom during the prayer. At the conclusion of the prayer and pledges, Judge Mack asked the bailiff if there was anyone waiting in the hallway and indicated that if so, the bailiff should now let them back into the courtroom. One individual did enter the courtroom at this time and his entrance drew the attention of everyone in the courtroom, including Judge Mack.

49. All of the prayers witnessed by the three individual plaintiffs in Judge Mack's courtroom have been sectarian prayers, delivered by Christians, in the name of Jesus.

### VIII. JUDGE MACK'S COURTROOM PRAYER PRACTICE VIOLATES THE UNITED STATES CONSTITUTION

50. Through his courtroom prayer practice, Judge Mack has violated the rights of each individual plaintiff to be free from religious endorsement by the government.

51. Judge Mack has created a courtroom prayer practice that unambiguously and unnecessarily endorses religion in violation of the Establishment Clause of the First Amendment to the U.S. Constitution.

52. The primary purpose of Judge Mack's courtroom prayer practice is to mark the start of each court session in a manner that promotes his personal religious beliefs to those in attendance. This purpose includes a celebration of the power of prayer, which is an exclusively religious concept.

53. The primary effect of Judge Mack's courtroom prayer practice is to advance religion in general, and Christianity specifically, through the machinery of the judiciary.

54. Due to the prayer practice, Judge Mack's courtroom has become excessively entangled with an exclusively religious ritual.

55. Through his actions and public statements, Judge Mack has created the unambiguous impression that he, acting in his official capacity as Justice of the Peace for Montgomery County, endorses religion over nonreligion and Christianity over all other faiths.

56. Due to his considerable influence and power as a Justice of the Peace, Judge Mack exerts coercive influence over those in his courtroom, effectively compelling their participation in his religious practice.

57. Judge Mack's prayer practice is not in keeping with the ceremonial proceedings exercised by the Texas Supreme Court or the U.S. Supreme Court.

## IX. <u>REQUEST FOR RELIEF</u>

WHEREFORE, the Plaintiffs request judgment against the Defendant as follows:

a) Judgment declaring that the actions of the Defendant have violated the Establishment Clause of the First Amendment to the United Stated Constitution;

b)      Judgment against the Defendant enjoining him from opening his court sessions with prayer;

c)      Judgment against the Defendant awarding the Plaintiff its reasonable costs, disbursements, and attorneys' fees, as allowed by law, including pursuant to 42 U.S.C. §1988; and

d)      Judgment awarding or ordering such further relief as the Court deems just and equitable.

Respectfully submitted,

_[signature]_

Patrick A. Luff
Attorney-in-Charge
Texas State Bar No. 24092728
S.D. Tex. Bar No. 2896159
LUFF LAW FIRM, PLLC
3123 NW Loop 410
San Antonio, TX 78230
Telephone:    210-504-7575
Telecopier:    830-584-0628
Email:    luff@lufflaw.com

Sam Grover
Wisconsin State Bar No. 1096047
Elizabeth Cavell
Wisconsin State Bar No. 1089353
(*motions for admission* pro hac vice *pending*)
FREEDOM FROM RELIGION FOUNDATION, INC.
P. O. Box 750
Madison, Wisconsin 53701
Telephone:    608-256-8900
Telecopier:    608-204-0422
Email:    sgrover@ffrf.org / ecavell@ffrf.org