# EXHIBIT A

# IN THE SUPREME COURT OF TEXAS

======================

No. 17-0105

======================

## W.A. "ANDY" MEYERS, INDIVIDUALLY AND IN HIS CAPACITY AS FORT BEND COUNTY COMMISSIONER, PETITIONER,

v.

## JDC/FIRETHORNE, LTD., A TEXAS LIMITED PARTNERSHIP, RESPONDENT

======================

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

======================

**Argued February 7, 2018**

JUSTICE GREEN delivered the opinion of the Court.

In this case, we consider whether the trial court has subject matter jurisdiction over this dispute between a land developer and a county commissioner. Because an individual county commissioner in Fort Bend County lacks legal authority to receive, process, or present a completed plat application to that county's commissioners court for approval, we hold that the developer has not shown a substantial likelihood that the injunction it seeks against the county commissioner will remedy its alleged injury, and thus, the developer does not have standing to pursue its claim for injunctive relief against the county commissioner. Accordingly, we reverse the court of appeals' judgment and dismiss with prejudice the developer's claim against the county commissioner in his official capacity.

## I. Background

JDC/Firethorne, Ltd. is the developer of Firethorne, a master-planned community on approximately 1,400 acres located within the extraterritorial jurisdiction of the City of Fulshear. The subdivision falls within Precinct 3 of Fort Bend County (the County), and W.A. "Andy" Meyers is the elected county commissioner for Precinct 3.[1] According to its pleadings, JDC/Firethorne began developing Firethorne in late 2003 or early 2004, and before January 2014, it obtained approval from the County for more than forty separate plat applications and construction plans for the Firethorne development.

The County's plat application and approval process for proposed subdivisions is governed by chapter 232 of the Texas Local Government Code and the Fort Bend County Regulations of Subdivisions. *See generally* TEX. LOC. GOV'T CODE §§ 232.002, .0025; Fort Bend County, Tex. Regulations of Subdivisions § 2.4–.6 (as adopted Aug. 27, 2002 and revised Sept. 9, 2003, Jan. 6, 2004, Aug. 24, 2004, & Apr. 26, 2005) (hereinafter Regulations of Subdivisions).[2] Both schemes require that the commissioners court of the county in which the land is located—here, the Fort Bend County Commissioners Court—approve a required plat.[3] *See* TEX. LOC. GOV'T CODE § 232.002(a);

---

[1] The Texas Constitution requires that each county be divided into four precincts and that each precinct elect one county commissioner. TEX. CONST. art. V, § 18(b). These four county commissioners, along with the county judge, comprise a county's commissioners court. *Id.*; *see also* TEX. LOC. GOV'T CODE § 81.001(a).

[2] The 2005 Regulations of Subdivisions were in effect at the time JDC/Firethorne instituted this suit in 2015. The County has since revised its Regulations of Subdivisions, s*ee* Regulations of Subdivisions (revised Jan. 24, 2017), but none of the provisions discussed in this opinion have changed.

[3] Whether a plat of the subdivision is required is governed by section 232.001 of the Local Government Code and section 2.1 of the County's Regulations of Subdivisions. *See* TEX. LOC. GOV'T CODE § 232.001; Regulations of Subdivisions § 2.1.

Regulations of Subdivisions § 2.5(A).  Local Government Code section 232.0025, titled "Timely

Approval of Plats," states in relevant part:

> (a)     The commissioners court of a county or a person designated by the commissioners court shall issue a written list of the documentation and other information that must be submitted with a plat application.   The documentation or other information must relate to a requirement authorized under this section or other applicable law.  An application submitted to the commissioners court or the person designated by the commissioners court that contains the documents and other information on the list is considered complete.
>
> . . . .
>
> (c)     An application is considered complete when all documentation or other information required by Subsection (a) is received. . . .
>
> (d)     Except as provided by Subsection (f), the commissioners court or the court's designee shall take final action on a plat application, including the resolution of all appeals, not later than the 60th day after the date a completed plat application is received by the commissioners court or the court's designee.
>
> . . . .
>
> (i)     If the commissioners court or the court's designee fails to take final action on the plat as required by Subsection (d):
>
> > . . . .
>
> > (2)     the plat application is granted by operation of law . . . .

TEX. LOC. GOV'T CODE § 232.0025.  Section 2.6 of the County's Regulations of Subdivisions

provides in relevant part:

> A.     The County Engineer shall issue a written list of the documentation and other information that must be submitted with a plat application. . . .   An application submitted to the County Engineer that contains the documents and other information on the list will be considered complete.

3

. . . .

    C.      An application is considered complete when all documentation or other information required . . . is received. . . .

    D.      Except as provided by *(Section 2, 2.6 F.)*, the County Engineer shall present a completed plat application, including the resolution of all appeals, to the County Commissioner' [sic] Court not later than the 60th day after the date a completed plat application is received by the County Engineer.

. . . .

    I.      If the Commissioner' [sic] Court fails to take final action on the plat as required by *(Section 2, 2.6 D.)*.
          1.      the plat application is granted by operation of law; and
          2.      the applicant may apply to a District Court in the county where the tract of land is located for a writ of mandamus to compel the Commissioners' Court to issue documents recognizing the plat's approval.

Regulations of Subdivisions § 2.6.  Thus, the County's Regulations of Subdivisions essentially track section 232.0025 as to the plat-application process, but the County has designated its county engineer as the official charged with receiving and processing plat applications.  *See id.* § 2.6(A).  The County has also added steps to the submission process laid out in section 232.0025.  *Compare id.* § 2.4 *and* 2.6(D) *with* TEX. LOC. GOV'T CODE § 232.0025.  First, Section 2.4 of the Regulations of Subdivisions requires that both the county engineer and the drainage district engineer sign off on the plat and construction documents:

    The final plat and the construction documents must be reviewed, approved and signed by the County Engineer and the drainage plans must be reviewed and approved by the Drainage District Engineer before the final plat is presented to Commissioners' Court [sic] for approval.

*Id.* § 2.4(B).  Second, as referenced above, the county engineer is the official instructed to "present a completed plat application . . . to the County Commissioner' [sic] Court."  *Id.* §2.6(D).

JDC/Firethorne claims that its process of successfully submitting plat applications for approval broke down between January 2014 and October 2014.  During that time, JDC/Firethorne submitted to the County's engineering department plat applications and construction plans for eight sections of the Firethorne development, including for Firethorne West Sections 16 and 19. JDC/Firethorne contends that those applications were placed on "hold" in an effort to "extract a concession" from JDC/Firethorne that it must construct four lanes of West Firethorne Road, a road within the Firethorne development.  JDC/Firethorne claims that Richard Stolleis, Fort Bend's county engineer, had previously acknowledged in an approved plat that JDC/Firethorne would construct only two lanes of West Firethorne Road.  JDC/Firethorne alleges that it has received the required approval from the Fort Bend County Drainage District and the City of Fulshear.

After an unsuccessful attempt to resolve the dispute through mediation, JDC/Firethorne filed this lawsuit seeking mandamus relief requiring Stolleis to "submit the completed plat application for Firethorne West Sections 16 and 19 to the Fort Bend County Commissioners Court" for approval.[4]  It is undisputed that the plat applications and construction plans for Sections 16 and 19 were submitted to Stolleis in May and June of 2014, but it appears that they have not been submitted to or approved by the commissioners court.  JDC/Firethorne alleges that Stolleis's refusal to approve

---

[4] In its original petition, JDC/Firethorne sought mandamus relief only as to the submitted plat for Section 19 in an effort "to expedite discovery and ruling . . . as to the legality of Fort Bend County's conduct."  After the trial court's order denying Meyers's plea to the jurisdiction, JDC/Firethorne amended its petition to add Section 16 in its request for relief.  Because Meyers challenges the trial court's subject matter jurisdiction with respect to both sections and the court of appeals considered both, we address both sections.

5

and submit the plat applications is *ultra vires* conduct for which he has "no legal or statutory authority and/or for which [he] refuse[s] to perform a purely ministerial act."  JDC/Firethorne also seeks mandamus relief instructing the commissioners court to approve the plat applications submitted to Stolleis and a permanent injunction against the County and the Fort Bend County Commissioners Court, ordering them to "permit the commencement of construction" for Sections 16 and 19, "permit and facilitate the recording of the plats," and "be enjoined from taking any action that would interfere" with JDC/Firethorne's construction.

At issue in this appeal is the injunctive relief JDC/Firethorne seeks against Meyers.  In its amended trial court petition, JDC/Firethorne alleges that Meyers "is inappropriately . . . instructing the Fort Bend County Engineering Department to delay processing the Firethorne West Section 16 and 19 submitted plats and construction plans."   JDC/Firethorne alleges that in making this instruction, Meyers "attempts to exact a concession (requiring JDC/Firethorne to construct all four lanes of West Firethorne Road) which is not an express, written requirement within the Fort Bend County Regulations of Subdivisions."   JDC/Firethorne asks the trial court to issue a permanent injunction "directing that Fort Bend County Commissioner Andy Meyers cease and desist—in the future—from instructing the Fort Bend County Engineering Department to 'hold,' 'delay,' or otherwise impede plats and construction plans submitted by JDC/Firethorne to Fort Bend County for approval individually and in his capacity as a Fort Bend County Commissioner."

Meyers filed a plea to the jurisdiction claiming that JDC/Firethorne's suit against him in his official capacity was barred by governmental immunity.[5]   Meyers's plea challenged JDC/Firethorne's pleadings, asserting that "[c]ommissioners courts exercise general control over county roads" and thus he has discretion that precludes an *ultra vires* claim.  Additionally, Meyers argued that the *ultra vires* exception to governmental immunity does not apply because JDC/Firethorne "has not alleged any illegal acts by him."   Meyers's plea asserted that JDC/Firethorne's *ultra vires* claim fails because "[n]othing in the Petition suggests any basis for concluding that talking to other County officials and employees regarding County business is illegal."  Meyers did not attach any evidence to his plea.

In its response to Meyers's plea, JDC/Firethorne attached several emails it contends show that Stolleis admitted he is holding the plat applications based on Meyers's "instruction" and that Meyers is applying his own "rule of thumb" in determining what roads developers must build.  One email from Stolleis to Meyers states in part:

---

[5] The claim against Meyers in his individual capacity is not at issue in this appeal.  "State officials may, of course, be sued in both their official and individual capacities."  *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.7 (Tex. 2009).  "Official immunity . . . is an affirmative defense protecting public officials from individual liability."  *Id.* at 380; *see also Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002).  Though Meyers filed his plea to the jurisdiction "individually and in his capacity as Fort Bend County Commissioner," his plea argued only that the claim against him should be dismissed because it was barred by governmental immunity "based on discretionary acts performed in [Meyers's] official capacity as a member of the Commissioners Court."  The denial of that plea gave rise to this appeal.  Meyers has not filed a motion for summary judgment on official-immunity grounds on the individual-capacity claim against him.  *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 845–846 (Tex. 2007) ("[T]ypically, . . . an official sued in both his official and individual capacities can file a plea to the jurisdiction in defense of the official capacity claims against him and at the same time file a motion for summary judgment on official immunity grounds on the individual capacity claims against him.").  Therefore, any claim against Meyers in his individual capacity remains pending before the trial court.  *See, e.g.*, *id.* at 846 n.3.

As I previously explained, at some point in the submittal and review process, we will not have the legal authority to deny approval of the plat for Section 16. In support of your request to Engineering, regarding the construction of W. Firethorne, we are not reviewing their subdivision plat at this time.

If this controversy, regarding their participation in construction of the thoroughfare, is not resolved promptly and when they meet all of the requirements for compliance with the Subdivision Regulations, it is my understanding that the plat will be approved by State Law.

Please let me know what steps you want to take to resolve this matter and how we can be of assistance.

At the hearing on Meyers's plea to the jurisdiction, the trial court found that Meyers "is a critical part of this entire matter because he's inserting himself in it." It denied the plea but allowed Meyers to reassert it after further discovery. Meyers timely appealed the trial court's interlocutory order pursuant to Texas Civil Practice and Remedies Code section 51.014(a)(8). *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8); *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 845 (Tex. 2007). The court of appeals affirmed, holding that "JDC/Firethorne's response to the plea raise[s] a fact issue as to whether Meyers acted without legal authority for purposes of demonstrating the district court's jurisdiction." 514 S.W.3d 279, 288 (Tex. App.—Houston [14th Dist.] 2016, pet. granted). Additionally, as to whether Meyers is a "responsible government actor," the court held that "[t]he jurisdictional pleadings and evidence, at a minimum, raise a fact issue as to whether the county engineer is violating the plat-application and plat-approval statutes and regulations at the behest or direction of Meyers." *Id*. at 289. The court rejected Meyers's argument that the *ultra vires* claim against him is defeated on the basis of his right to free speech. *Id*. at 290. Finally, the court held that the *ultra vires* claim does not implicate discretionary acts by Meyers, reasoning that even

8

though the Regulations of Subdivisions give county officials discretion regarding the design and construction of subdivision roadways, they do not "grant any discretion to a county commissioner with regard to the plat-approval process." *Id*. We granted Meyers's petition for review. 61 Tex. Sup. Ct. J. 71 (Oct. 27, 2017).

## II. Analysis

Subject matter jurisdiction is essential to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Governmental immunity from suit defeats a trial court's subject matter jurisdiction, and thus this immunity is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). In one issue, Meyers challenges JDC/Firethorne's pleadings, contending that governmental immunity bars JDC/Firethorne's *ultra vires* suit against him because he is not the county official responsible for processing the County's plat applications, and thus, the injunctive relief JDC/Firethorne seeks against him would not remedy its alleged injury. JDC/Firethorne responds that Meyers is a proper *ultra vires* defendant because he "lacked authority" under any statute or regulation to instruct Stolleis to halt the review of JDC/Firethorne's submitted plat applications.

The parties debate what "authority" Meyers has regarding processing plat applications in the County. Though the parties argue in terms of our *ultra vires* jurisprudence, the issue of whether Meyers has the power to advance JDC/Firethorne's plat applications, and thus remedy the alleged harm upon which JDC/Firethorne's suit is based, is ultimately a question of whether JDC/Firethorne has standing to seek this injunction against Meyers. The doctrine of standing, just like governmental immunity, goes to whether or not a court has subject matter jurisdiction to decide a case. *Tex. Ass'n*

9

*of Bus.*, 852 S.W.2d at 443; *see also Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012)

("Standing is a constitutional prerequisite to suit."). Because it is a component of subject matter

jurisdiction, standing cannot be waived and may be raised for the first time on appeal. *W. Orange-*

*Cove Consol. I.S.D. v. Alanis*, 107 S.W.3d 558, 583 (Tex. 2003); *Tex. Ass'n of Bus.*, 852 S.W.2d at

445; *see also Republic of Tex. v. Laughlin*, Dallam 412, 412 (Tex. 1841) ("Before we are permitted

to decide the several points made in this case, we feel it to be our duty first to dispose of a

preliminary question . . . that is, 'whether the record and proceedings before us make out a proper

case for the interposition and decision of this court.'"). A court can—and if in doubt, must—raise

standing on its own at any time. *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 580 (Tex.

2013); *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46 ("Consequently, we proceed to determine

here, on our own motion, whether [the petitioner] has standing to bring this suit.").

### A. Standing

"In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real

controversy between the parties that will be resolved by the court." *Heckman*, 369 S.W.3d at 154;

*see also Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). The standing requirement derives from

the Texas Constitution's provision for separation of powers among the branches of government,

which denies the judiciary authority to decide issues in the abstract, and from the open courts

provision, which provides court access only to a "person for an injury done him." Tex. Const. art.

I, § 13; *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44. "A plaintiff does not lack standing simply

because he cannot prevail on the merits of his claim; he lacks standing because his claim of injury

is too slight for a court to afford redress." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008).

Texas's standing test parallels the federal test for Article III standing: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Heckman*, 369 S.W.3d at 154 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated by Lexmark Int'l v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014)). Given the parallels between the federal test and our own, we may look to federal standing requirements for guidance. *Id.*; *Brown*, 53 S.W.3d at 305. The United States Supreme Court has articulated the three elements of the standing test:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted); *see also Heckman*, 369 S.W.3d at 154–55 (quoting same).

Similarly, under Texas law, the standing inquiry begins with determining whether the plaintiff has *personally* been injured, that is, "he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury." *Heckman*, 369 S.W.3d at 155; *see also S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007). The second element requires that the plaintiff's alleged injury be "fairly traceable" to the defendant's conduct because

"a court [can] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Heckman*, 369 S.W.3d at 155 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).  This required showing of a causal connection between the plaintiff's injury and the defendant's conduct serves as a means of identifying the proper defendants.  *See id.*; 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3531.5 (3d. ed. 2008).  To establish the third standing requirement—often referred to as "redressability"—a plaintiff must show that there is a substantial likelihood that the requested relief will remedy the alleged injury.  *Heckman*, 369 S.W.3d at 155–56; *see Abbott v. G.G.E.*, 463 S.W.3d 633, 646 (Tex. App.—Austin 2015, pet. denied) ("The redressability prong deprives courts of jurisdiction over cases in which the likelihood of the requested relief redressing the plaintiff's injury is only speculative.").  "If, for example, a plaintiff suing in a Texas court requests injunctive relief . . . but the injunction could not possibly remedy his situation, then he lacks standing to bring that claim." *Heckman*, 369 S.W.3d at 155 (citing *Willams v. Lara*, 52 S.W.3d 171, 184–85 (Tex. 2001)).

The United States Supreme Court has emphasized that "[w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) . . . depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Lujan*, 504 U.S. at 561.  When "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*" other than the plaintiff, then "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* at 562 (quoting *Allen*, 468 U.S. at 758).  In such

12

cases, "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,'" and it becomes the plaintiff's burden to plead facts showing that "those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Id.* (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).

## B.  Standard of Review

Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling de novo. *Miranda*, 133 S.W.3d at 228; *see Heckman*, 369 S.W.3d at 150–51 (reviewing de novo the defendant's plea to the jurisdiction challenging the plaintiffs' standing). When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case, construing the pleadings liberally in favor of the plaintiff and considering the plaintiff's intent. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts that affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 226–27. On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, such that it is impossible to amend the pleadings to invoke jurisdiction, the plea may be granted and the suit dismissed without allowing the plaintiffs an opportunity to amend. *Id.* at 227; *see also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012) ("In some instances the pleadings or record may conclusively negate the existence of jurisdiction, in which case the suit should be dismissed.").

### C.  JDC/Firethorne's Standing

This case requires us to examine Meyers's authority as to plat applications in the County. As explained above, to establish standing, a plaintiff must plead facts demonstrating that the plaintiff suffered an injury, this injury is fairly traceable to the defendant's conduct, and this injury is likely to be redressed by the requested relief.  *Heckman*, 369 S.W.3d at 155–56; *see also Lujan*, 504 U.S. at 560–61.  We hold that JDC/Firethorne has failed to satisfy the redressability requirement as to the relief it seeks against Meyers, and thus, JDC/Firethorne lacks standing to pursue this injunction against him in his official capacity.[6]

The principal injury JDC/Firethorne alleges is that its plat applications for Sections 16 and 19 are being improperly "held" by the County's engineering department and have not yet been presented for approval to the commissioners court as required by chapter 232 and the Regulations of Subdivisions.  JDC/Firethorne attributes this harm in part to Meyers, alleging that he is acting "outside the course and scope of any legal or statutory authority" by "instructing" Stolleis to "hold" the submitted plats.  It asserts that the emails between Meyers and Stolleis are "actual evidence that Meyers is controlling and directing the Engineering Department with regard to the actions that they take in his precinct."  Thus, JDC/Firethorne seeks a permanent injunction against Meyers, "directing [him] to cease and desist—in the future—from instructing the Fort Bend County Engineering Department to 'hold,' 'delay,' or otherwise impede" the plat applications and construction plans

---

[6] Because we hold that JDC/Firethorne's suit as to Meyers fails the redressability requirement for standing, we need not address whether the "injury-in-fact" or "causal connection" requirements for standing are satisfied here.  *See Heckman*, 369 S.W.3d at 155; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105 (1998) (declining to address whether the plaintiff's alleged injury satisfied the injury-in-fact requirement for standing when the plaintiff's suit failed the redressability requirement).

JDC/Firethorne submits, asserting that such an injunction is necessary to ensure that its submissions are processed according to chapter 232 and the Regulations of Subdivisions.[7]

Whether a plaintiff has sufficiently pled that the requested remedy will redress its harm can turn on whether the plaintiff has shown that the defendant has authority to respond to any requested injunctive relief. *See Lujan*, 504 U.S. at 568–70 (concluding that the plaintiffs lacked standing when their injury could be redressed only by terminating funding for foreign projects, and the agencies that funded those projects were not parties to the suit, so any relief the trial court could have provided against the existing defendants was not likely to produce the plaintiffs' requested relief) (Scalia, J.); *Okpalobi v. Foster*, 244 F.3d 405, 419, 426–27 (5th Cir. 2001) (en banc) (concluding that the plaintiff lacked standing because an injunction granted by the district court was "utterly meaningless" when the defendants had no powers to redress the injuries alleged); *Good Shepard Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 836–37 (Tex. App.—Austin 2010, no pet.) (holding, in part, that the plaintiff hospital lacked standing when it was merely speculative that the defendant could redress the hospital's injury); *see also* 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3531.6 (3d ed. 2008) ("Other cases as well deny standing because . . . it is uncertain whether the defendant has authority to respond to injunctive relief."). JDC/Firethorne's insistence that Meyers has acted "without authority" as to the plat-application submission process

---

[7] In their pleadings, the parties dispute whether the plat applications for Sections 16 and 19 have been approved by operation of law because no final action has been taken within the time required by the Local Government Code or the Regulations of Subdivisions. *See* TEX. LOC. GOV'T CODE § 232.0025(i)(2); Regulations of Subdivisions § 2.6(I). While the trial court will undoubtedly consider this in the suit against Stolleis, the County, and the Fort Bend County Commissioners Court, for purposes of this appeal, we address only JDC/Firethorne's claim against Meyers, in which it seeks a permanent injunction "directing that Fort Bend County Commissioner Andy Meyers cease and desist—*in the future*—from instructing the Fort Bend County Engineering Department to 'hold,' 'delay,' or otherwise impede plats and construction plans submitted by JDC/Firethorne to Fort Bend County for approval . . . ." (emphasis added).

betrays the deficiency in standing—if Meyers has no legal power over the processing and presentment of plat applications, then JDC/Firethorne has not shown a substantial likelihood that its requested relief will remedy its alleged injury. *See Heckman*, 369 S.W.3d at 155–56. As explained above, the County's Regulations of Subdivisions designate the county engineer as the sole county official responsible for receiving all documentation and information that must be submitted with the plat application. Regulations of Subdivisions § 2.6(A), (D). The county commissioners have no authority to "present a completed plat application" to the commissioners court—the Regulations of Subdivisions delegate that responsibility solely to the county engineer. *See id.* § 2.6(D). Meyers, as a single county commissioner, cannot present a completed plat application to the commissioners court for approval, nor does he have authority, as an individual commissioner, to approve a plat application. *See* TEX. LOC. GOV'T CODE § 232.002(a) ("The commissioners court of the county in which the land is located must approve . . . a [required] plat . . . ."); Regulations of Subdivisions § 2.5(A) ("The Commissioners Court of the Fort Bend County must approve . . . a [required] plat . . . ."). In fact, Meyers has no authority or responsibility with respect to processing plat applications until they reach the commissioners court, and even then, he acts only as one member of a five-person body. *See* TEX. LOC. GOV'T CODE § 232.002(a); Regulations of Subdivisions § 2.5(A); *Hays Cty. v. Hays Cty. Water Planning P'ship*, 106 S.W.3d 349, 360 (Tex. App.—Austin 2003, no pet.) ("The commissioners court may only validly act as a body; the acts of a single commissioner do not bind the court."). This case therefore implicates the warning we issued in *Heckman*—"[i]f . . . a plaintiff suing in a Texas court requests injunctive relief . . . but the injunction could not possibly remedy his situation, then he lacks standing to bring that claim." 369

16

S.W.3d at 155.  Because the injunction JDC/Firethorne seeks against Meyers could not possibly remedy its alleged harm, JDC/Firethorne lacks standing to seek such relief against Meyers.

While there is no remedy the trial court could fashion against Meyers that would afford relief as to JDC/Firethorne's plat applications, JDC/Firethorne does seek relief with respect to other defendants who could remedy its alleged injury.  Specifically, it seeks a writ of mandamus directing Stolleis to submit the plat applications to the commissioners court.  It also seeks a writ of mandamus directing the commissioners court to approve the applications and an injunction requiring the County and the commissioners court to permit the commencement of the construction of Sections 16 and 19.  If the trial court were to issue the requested writs instructing Stolleis to present completed plat applications to the commissioners court and instructing the commissioners court to approve those completed applications, then it would provide full relief for the principal injury about which JDC/Firethorne complains.  Thus, any decision from any court granting the requested injunction against Meyers would be ineffectual and unnecessary.  *See* 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3531.6 (3d ed. 2008) ("An abstract decision without remedial consequence seems merely advisory, an unnecessary expenditure of judicial resources that burdens the adversary and carries all the traditional risks of making bad law and trespassing on the provinces of the executive and legislature.").

"Governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review."  *Holland v. Taylor*, 270 S.W.2d 219, 221 (Tex. 1954) (quoting *Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944)).  Further, "individual commissioners have no authority to bind

the county by their separate action." *Canales v. Laughlin*, 214 S.W.2d 451, 455 (Tex. 1948); *see also Hays Cty.*, 106 S.W.3d at 360.  One county commissioner acting alone cannot process or approve a plat application, *see* TEX. LOC. GOV'T CODE § 232.002(a), nor can one county commissioner alone fire a county engineer.  *See* TEX. TRANSP. CODE § 252.307(b).  The fact that a county commissioner may have "influence" as a result of his position in the hierarchy of county government is merely a political reality.  But even if such "influence" somehow contributed to Stolleis's decision to "hold" the plat applications, this political reality does not compel the conclusion that JDC/Firethorne has standing to pursue this injunction against Meyers when Meyers has no legal authority to remedy JDC/Firethorne's alleged harm.  Besides the potential First Amendment problems we foresee in limiting public officials' communications regarding what is arguably a matter of public concern, allowing JDC/Firethorne's claim against Meyers to move forward on these facts would allow a plaintiff to join as a defendant any government official who may have "influence" over the primary actor with authority over the matter at issue.

### III.  Conclusion

Because an individual county commissioner in the County lacks legal authority to receive, process, or present a completed plat application to the County's commissioners court for approval, we hold that JDC/Firethorne has not shown a substantial likelihood that the injunction it seeks against Meyers will remedy its alleged injury.  Therefore, JDC/Firethorne does not have standing to pursue its claim for injunctive relief against Meyers.  Because JDC/Firethorne's pleadings conclusively negate the existence of subject matter jurisdiction, JDC/Firethorne's claim against

Meyers in his official capacity must be dismissed.  Accordingly, we reverse the court of appeals'

judgment and dismiss with prejudice JDC/Firethorne's claim against Meyers in his official capacity.

 

_____
Paul W. Green
Justice

OPINION DELIVERED: June 8, 2018

19