United States District Court
Southern District of Texas

**ENTERED**

September 27, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FREEDOM FROM RELIGION             §
FOUNDATION, INC., JANE DOE,       §
JOHN ROE, and JANE NOE,           §
                                  §
        Plaintiffs,               §
                                  §
v.                                §          CIVIL ACTION NO. H-17-881
                                  §
JUDGE WAYNE MACK, in his          §
official capacity as              §
Justice of the Peace, and         §
MONTGOMERY COUNTY, TEXAS,         §
                                  §
        Defendants.               §

MEMORANDUM AND ORDER

        Pending is Defendants' Motion for Judgment on the Pleadings
(Document No. 65).[1]  After carefully considering the motion,
response, reply, notice of relevant authority and response thereto,
and applicable law, the Court concludes as follows.

I. Background

        Plaintiffs' allegations in this suit are summarized in the
Court's Memorandum and Order entered January 19, 2018, at pages
1-7, and need not be repeated here.[2]  Plaintiffs allege that the

_____

        [1] A separate Motion by Judge Wayne Mack, in his Individual
Capacity, for Leave to File Brief as *Amicus Curiae* in Support of
Defendants' Motion for Judgment on the Pleadings (Document No. 69),
to which Plaintiffs have filed no opposition, is GRANTED and Judge
Mack's proposed *amicus* brief at Document No. 69-1 is deemed filed.

        [2] Document No. 52.

courtroom prayer practice of Judge Wayne Mack, the elected Justice of the Peace for Precinct 1 of Defendant Montgomery County, Texas (the "County"), violates the Establishment Clause of the First Amendment.[3]   The County moves for judgment on the pleadings, arguing that (1) it is entitled to statutory immunity under 42 U.S.C. §§ 1983 and 1988, (2) it cannot be liable under <u>Monell</u> for actions Judge Mack took in his judicial capacity, and (3) Plaintiffs lack standing because their injuries would not be redressed by the relief they seek against the County.[4]

## II. <u>Identity of the Defendant(s)</u>

The parties in their submissions often refer to "Defendants" in the plural, which may confuse the actual identity of Defendant. Plaintiff have repeatedly clarified that their claims against Judge Mack are limited to his official capacity.   The Court in its Memorandum and Order dated January 19, 2018, explained that "Plaintiffs' claims against Judge Mack, which are limited to his official capacity, are merely another way of stating their claims against the County."[5]   *See* <u>Kentucky v. Graham</u>, 105 S. Ct. 3099, 3105 (1985) ("As long as the government entity receives notice and

---

[3] Document No. 22 (1st Am. Compl.).   The Court previously dismissed the claims of Plaintiff Jane Noe for lack of standing. Document No. 52.

[4] Document No. 65.

[5] Document No. 52 at 7.

2

an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

When Plaintiffs subsequently suggested that their official capacity claims might be claims against an undisclosed government entity other than the County,[6] the Court ordered Plaintiffs to state "whether their claim against Judge Mack in his official capacity is a claim against any government entity other than Montgomery County, and if so, [to] identify that entity and show that Plaintiffs have served or are actively seeking service upon it."[7]  The Court further ordered that "[i]f no such other entity subject to suit is so identified by Plaintiffs, then Plaintiffs' claim against Judge Mack in his official capacity will be dismissed as redundant with their claim against Montgomery County."[8]  In response, Plaintiffs confirmed that "[f]rom the outset, Plaintiffs sued Judge Mack in his official capacity, with the understanding that that was simply another way of suing Montgomery County. Plaintiffs do not identify any other government entity synonymous with Judge Mack in his official capacity."[9]  Plaintiffs' claims

_____

[6] *See* Document No. 75 at 20; Document No. 84 at 2.

[7] Document No. 85 at 3.

[8] <u>Id.</u>

[9] Document No. 86 at 1.  This is consistent with the County's position in defending Plaintiffs' claims against Judge Mack in his official capacity.  *See, e.g.*, Document No. 64 ¶ 73 (Def.'s Answer) ("The First Amended Complaint alleged redress only against

against Judge Mack in his official capacity are therefore DISMISSED as redundant.  *See* <u>Bustillos v. El Paso Cty. Hosp. Dist.</u>, 226 F. Supp. 3d 778, 789 (W.D. Tex. 2016) ("[W]hen a plaintiff asserts claims against both the municipal entity and a municipal official in his or her official capacity, the Court can dismiss the official capacity claim as 'redundant' to the municipal-entity claim.") (citing <u>Sanders–Burns v. City of Plano</u>, 594 F.3d 366, 373 (5th Cir. 2010)), *aff'd*, 891 F.3d 214 (5th Cir. 2018); *see also* <u>Kinnison v. City of San Antonio</u>, No. CIV.A. SA-08-CA-421X, 2009 WL 578525, at *2 (W.D. Tex. Mar. 5, 2009) ("Courts routinely dismiss official capacity claims as redundant in § 1983 actions.") (collecting cases).

### III. <u>Standing</u>

"Because standing is an element of the constitutional requirement of 'case or controversy,' lack of standing deprives the court of subject matter jurisdiction." <u>In re Weaver</u>, 632 F.2d 461, 462 n.6 (5th Cir. 1980).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  Accordingly, the Court turns first to the County's argument that Plaintiffs lack Article III standing to sue the County.

---

Montgomery County because Judge Mack is sued only in his official capacity.").

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" <u>Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.</u>, 102 S. Ct. 752, 757 (1982). "The power to declare the rights of individuals and to measure the authority of governments . . . 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy.'" <u>Id.</u> at 758 (quoting <u>Chicago & Grand Trunk R. Co. v. Wellman</u>, 12 S. Ct. 400, 402 (1892)). Accordingly, the Court "has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." <u>Id.</u> "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 120 S. Ct. 693, 704 (2000). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016) (citation omitted).

In its motion to dismiss, the County argued that Plaintiffs failed to establish the first requirement of standing because they

had not alleged a cognizable injury in fact nor alleged that such injury was imminent, arguments that the Court rejected in its Memorandum of January 19, 2018 ("Memorandum") (Document No. 52). Additionally, "[v]iewing the pleadings in the light most favorable to Plaintiffs," see Memorandum at 36, the Court found that Plaintiffs' Amended Complaint stated a claim "against the County based on a persistent, widespread practice [by Judge Mack] of violating the Establishment Clause." Id. at 39. However, focused attention was not given by the parties in their briefing and oral arguments, or by the Court in its Memorandum, to the issue now highlighted by the County, namely, whether Plaintiffs' injury arose from the County's challenged actions and whether it would be redressed by declaratory or injunctive relief against the County, as is necessary for Article III standing.[10]

---

[10] The undersigned Judge erred in not raising this fundamental jurisdictional imperative of redressability. "[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 126 S. Ct. 1235, 1244 (2006) (citation omitted). The Supreme Court has observed that "[a]s is often the case, the questions of causation and redressability overlap." Massachusetts v. E.P.A., 127 S. Ct. 1438, 1468 (2007). The undersigned vacates all references to the question of redressability contained in its Memorandum of January 19, 2018 that are at variance with this Memorandum, including the erroneous preliminary statement at page 10 of the January 19th Memorandum, that "Plaintiffs have established the second and third requirements of standing: their alleged injury if cognizable arises from Judge Mack's challenged prayer practice and would be redressed by a decision holding the prayer practice to be unconstitutional." Document No. 52 at 10.

The County argues that the relief Plaintiffs seek against it would not redress Plaintiffs' injury because the County has no power to stop Judge Mack from employing the prayer practice to which Plaintiffs object.[11] As the County correctly argues, justices of the peace are elected officials whose office is established by the same section of the Texas Constitution that establishes county commissioners courts. TEX. CONST. art. V, § 18. Although commissioners courts are authorized to draw the boundaries of the county's precincts, and "in each such precinct there shall be one Justice of the Peace," id., commissioners courts are given no authority over the office of the justice of the peace. The next following section of the Constitution confers upon justices of the peace their criminal and civil jurisdiction, with no mention or reference whatever to commissioners courts. TEX. CONST. art. V, § 19. Other matters pertaining to justices of the peace are prescribed by statutes. For examples, "The justices of the peace in each county shall, by majority vote, adopt local rules of administration." TEX. GOV'T CODE § 27.061. While a justice of the peace may be removed for incompetency, official misconduct, or intoxication, such removal is not at the discretion of the county commissioners court but rather is initiated by the filing of a petition in district court--the same process for removing a county commissioner or county judge. TEX. LOC. GOV'T CODE §§ 87.012, 87.013,

---

[11] Document No. 65 at 14.

87.015.   Plaintiffs cite no Texas constitutional or statutory provision or caselaw authorizing counties, including county commissioners courts, to control the judicial or administrative courtroom practices of justices of the peace, and the Court has found no such authority.[12]

Where a defendant has no authority to stop an illegal act, injunctive relief is "utterly meaningless" and there is no Article III standing.  Okpalobi v. Foster, 244 F.3d 405, 426-27 (5th Cir. 2001) (*en banc*) ("Because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court.").   In Lujan v. Defenders of Wildlife, 112 S. Ct. 2130 (1992), a majority of the justices who reached redressability found that it was lacking where "redress of

---

[12] The commissioners court sets the time and place for holding justice court, and, in precincts with more than 75,000 inhabitants, "the commissioners court shall provide and furnish a suitable place in the courthouse for the justice of that precinct to hold court." TEX. GOV'T CODE § 27.051.   The commissioners court also sets the salary for justices of the peace, subject to a statutory minimum. TEX. LOC. GOV'T CODE § 152.012.   Such responsibilities, however, do not amount to control over the courtroom proceedings of justices of the peace.  *Cf.* McMillian v. Monroe County, 117 S. Ct. 1734, 1740 (1997) ("The county's payment of the sheriff's salary does not translate into control over him, since the county neither has the authority to change his salary nor the discretion to refuse payment completely.   The county commissions do appear to have the discretion to deny funds to the sheriffs for their operations beyond what is 'reasonably necessary.'   But at most, this discretion would allow the commission to exert an attenuated and indirect influence over the sheriff's operations.") (internal citation omitted).

8

the only injury in fact respondents complain of requires action
(termination of funding until consultation) by the individual
funding agencies [housed outside the Department of the Interior
that were not parties to the suit]; and any relief the District
Court could have provided in this suit against the [Defendant]
Secretary [of the Interior Lujon] was not likely to produce that
action." Id. at 2142 (Scalia, J., joined as to Part III-B by
Rehnquist, C.J., and White and Thomas, JJ.).[13] Similarly, the Fifth
Circuit sitting en banc in Okpalobi held that plaintiffs--providers
of abortion services--failed to establish Article III
redressability for their claims against Louisiana's governor and
attorney general, who were not empowered with a "duty or ability to
do anything" with respect to the challenged statute that allowed
private causes of action to be filed against abortion providers.
244 F.3d at 426-27; see also id. at 427 ("We do not challenge that
the plaintiffs are suffering a threatened injury. We only say that
the injury alleged by the plaintiffs is not, and cannot possibly
be, caused by the defendants--that is, these defendants will not

---

[13] Justices Kennedy and Souter agreed that the plaintiffs
lacked standing but declined to reach redressability. See Lujan,
112 S. Ct. at 2146 ("In light of the conclusion that respondents
have not demonstrated a concrete injury here sufficient to support
standing under our precedents, I would not reach the issue of
redressability that is discussed by the plurality in Part III-B.").
Three justices would have found redressability. See id. at 2149
(Stevens, J., concurring in the judgment); id. at 2155 (Blackmun,
J., joined by O'Connor, J., dissenting).

file and prosecute a cause of action under Act 825 against these plaintiffs; and that their injury cannot be *redressed* by these defendants--that is, these defendants cannot prevent purely private litigants from filing and prosecuting a cause of action under Act 825 and cannot prevent the courts of Louisiana from processing and hearing these private tort cases."); *accord* <u>Meyers v. JDC/Firethorne, Ltd.</u>, 548 S.W.3d 477, 489 (Tex. 2018) (looking to federal law on redressability and dismissing for lack of standing injunction against county commissioner who lacked authority to present or approve plat application) ("The fact that a county commissioner may have 'influence' as a result of his position in the hierarchy of county government is merely a political reality. But even if such 'influence' somehow contributed to Stolleis's decision to 'hold' the plat applications, this political reality does not compel the conclusion that JDC/Firethorne has standing to pursue this injunction against Meyers when Meyers has no legal authority to remedy JDC/Firethorne's alleged harm. . . . [A]llowing JDC/ Firethorne's claim against Meyers to move forward on these facts would allow a plaintiff to join as a defendant any government official who may have 'influence' over the primary actor with authority over the matter at issue.").

Courts likewise have found that standing was lacking in claims against municipalities based on the acts of local judges whom they did not have power to control. *See* <u>Eggar v. City of Livingston</u>,

40 F.3d 312, 316 (9th Cir. 1994) ("A municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with the desires of the municipality.") (citations omitted). The Ninth Circuit in Eggar held that the plaintiffs lacked standing to pursue their claims for declaratory and injunctive relief against the city for a municipal judge's policy of imprisoning indigent defendants without offering appointed counsel, explaining that "the City has no control over the state judicial functions of Judge Travis. Thus declaratory or injunctive relief against the City cannot achieve the desired goal of having Judge Travis cease his alleged unconstitutional conduct." Id. at 317. In a case arising in Texas, the Fifth Circuit quoted and adopted Eggar's reasoning in rejecting a plaintiff's wrongful incarceration claim, holding that the "relevant decisions were made, not by a City policymaker, but by a municipal judge acting in his judicial capacity." Garcia Guevara v. City of Haltom City, 106 F. App'x 900, 902 (5th Cir. 2004). The Court also rejected the additional argument that the defendant city had ratified the judge's detention decision. Id. ("Because the municipality did not have the power to control the municipal judge's actions, however, it also did not have the power to ratify them.").

Plaintiffs have not met their burden to establish that the County has any power to control Judge Mack's courtroom prayer

11

practice so as to establish redressability.   Nor have Plaintiffs made an argument for such a holding.   To the contrary, Plaintiffs allege that "Judge Mack is responsible for devising and implementing the prayer practice," and the only alleged specific act of the County related thereto is that "Montgomery County administers the chaplaincy program from which Judge Mack selects chaplains to deliver prayers in his courtroom."[14]   Plaintiffs clarified at oral arguments on January 10, 2018, that they do not challenge the County's maintenance of the chaplains list for use in connection with Judge Mack's duties as coroner, but only the chaplains' role in opening Judge Mack's courtroom proceedings with prayer.[15]   Moreover, while Plaintiffs attempt to disaggregate various aspects of Judge Mack's prayer practice and policy, it is only the actual prayers in Judge Mack's courtroom that injure Plaintiffs under the Establishment Clause so as to provide the first element of standing, and those prayers are not attributable to the County.[16]

_____

[14] Document No. 22 ¶¶ 15, 17.

[15] Document No. 62 at 26:2-16.

[16] For example, the deputy's action in locking Judge Mack's courtroom doors pursuant to Judge Mack's order is not in and of itself a violation of the Establishment Clause without Judge Mack's requirement for the oral prayers themselves.   Even if locking the doors injured Plaintiffs, however, those acts would not be attributable to the County, nor have Plaintiffs cited any authority permitting the County to instruct its deputies to disregard Judge Mack's courtroom instructions.   See Burns v. Mayes, 369 F. App'x 526, 531 (5th Cir. 2010) ("As a protocol of the 410th Judicial

Instead of showing how a judgment against the County could redress their injuries, Plaintiffs attempt to shift the burden to the County to identify another government entity responsible for Judge Mack's actions, arguing that in the absence of such an entity, the County necessarily must be responsible for Judge Mack's policy.[17] Plaintiffs cite no authority for this proposition, nor does the caselaw support requiring defendant municipalities to identify a liable party before being entitled to dismissal. *See, e.g.*, Bigford v. Taylor, 834 F.2d 1213, 1222-23 (5th Cir. 1988) (affirming district court's holding that Texas county was not liable for justice of the peace's acts and omissions because Texas justices of the peace--unlike county judges--preside over only single districts and are not policymakers for the county, such that plaintiff could not recover for alleged due process violations). Plaintiffs also emphasize the distinction between a judge's administrative and judicial duties that is often critical to determinations of judicial immunity and municipal liability. *See, e.g.*, Forrester v. White, 108 S. Ct. 538, 544 (1988) ("The decided

---

District applicable to criminal defendants appearing before a judge of the 410th Judicial District, the [substance abuse program] is clearly a state judicial policy, not a County policy. The fact that the County's law enforcement officers carried out Judge Mayes's orders is of no moment.") (holding that substance abuse recovery program established by local judge was not attributable to county even though county law enforcement officers carried out judge's orders and the county's website described the program).

[17] Document No. 75 at 20.

cases [on judicial immunity], however, suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform."); Krueger v. Reimer, 66 F.3d 75, 77 (5th Cir. 1995) ("A local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the county.") (citations omitted). For purposes of Article III redressability, however, what matters is not whether Judge Mack's prayer practice is labeled judicial or administrative, but whether the County has power to control the practice.   Plaintiffs have not shown that the County has any authority to stop Judge Mack's courtroom prayer practice, so as to allow Plaintiffs' injuries to be redressed by injunctive or declaratory relief against the County.

In sum, Plaintiffs' pleadings sufficiently allege that their exposure to the prayers conducted in Judge Mack's courtroom constitutes a concrete, actual injury in fact, but they have persisted in their decision not to seek relief from the person responsible for that injury, namely Judge Mack in his individual capacity, even when he retained counsel and attempted to join issue with Plaintiffs on the merits of their claims.   Instead, Plaintiffs chose to allege claims solely against an entity that has no power to stop Judge Mack's courtroom prayer practice.   Accordingly, because the County did not cause Plaintiffs' injury and a judgment

14

against the County would not redress Plaintiffs' injury, Plaintiffs lack Article III standing to maintain their claims.   Plaintiffs' claims are therefore dismissed without prejudice for lack of subject matter jurisdiction.[18]

## IV. Order

It is therefore

ORDERED that Defendants' Motion for Judgment on the Pleadings (Document No. 65) is GRANTED as to lack of standing because Plaintiffs' injuries would not be redressed by a judgment against the County, and, accordingly, Plaintiffs' claims are DISMISSED without prejudice for lack of subject matter jurisdiction.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 27TH day of September, 2018.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[18] The County requests dismissal with prejudice, but "[a] decision by a court without subject-matter jurisdiction is not conclusive of the merits of the claim asserted, meaning judgment should be entered without prejudice." Griener v. United States, 900 F.3d 700, 705 (5th Cir. 2018) (citations omitted).