UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., JANE DOE, and JOHN ROE<br>*Plaintiffs*, | §<br>§<br>§<br>§<br>§ | |
| v. | §<br>§ | CASE NO. 4:17-cv-881 |
| JUDGE WAYNE MACK in his official capacity as Justice of the Peace, and MONTGOMERY COUNTY, TEXAS<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§ | |

**PLAINTIFFS' MOTION TO AMEND THE COURT'S SEPTEMBER 27, 2018 MEMORANDUM AND ORDER, AND FINAL JUDGMENT**

Plaintiffs come now and respectfully move under Rule 59(e) of the Federal Rules of Civil Procedure that the Court temporarily suspend its September 27, 2018 Memorandum and Order (Doc. 88) and accompanying Final Judgement (Doc. 89) and grant leave to Plaintiffs to serve the State of Texas as an additional party to this action. Plaintiffs have included below a memorandum of law, outlining the need for this requested relief.

In the alternative, Plaintiffs request that this Court temporarily suspend its Memorandum and Order, and accompanying Final Judgment, and grant Plaintiffs leave to file an amended complaint.

Proposed orders granting these two alternative requests for relief have been separately filed along with this motion.

# MEMORANDUM SUPPORTING PLAINTIFFS' RULE 59(e) MOTION TO AMEND

## Standard of Review

Plaintiffs respectfully move for this Court to amend its September 27, 2018 Memorandum and Order (Doc. 88) and accompanying Final Judgement (Doc. 89) to correct an error of law and to prevent a manifest injustice. *See* Fed. R. Civ. P. 59(e). A Rule 59(e) motion "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "A district court enjoys considerable discretion in granting or denying a motion under Rule 59(e)" and "Courts typically consider four factors in exercising their discretion," two of which, relevant here, are: (1) "whether the judgment was based upon a manifest error of fact or law" and (2) "whether amendment is necessary to prevent manifest injustice." *Clancy v. Emp'rs Health Ins. Co.*, 101 F.Supp.2d 463, 464 (E.D. La. 2000).[1]

While reconsideration of a judgment under Rule 59(e) is a remedy that "should be used sparingly," *Templet*, 367 F.3d at 479 (citing *Clancy*, 101 F.Supp.2d at 465), in this instance Plaintiffs identify a manifest error of law—the dismissal of their claim for declaratory relief against Judge Mack in his official capacity as a judicial officer. The dismissal of this claim runs counter to the plain language of 42 U.S.C. § 1983, which contemplates declaratory relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity." To maintain the Court's Order and Final Judgment in its current form, dismissing all claims including a claim for declaratory relief, would preserve a manifest injustice by robbing Plaintiffs of their statutorily established recourse against the government for the constitutional violations of its officer.

Furthermore, while a Rule 59(e) motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)), in this

---

[1] The other two factors, not present in the instant case, are: (1) "whether the movant presents newly discovered or previously unavailable evidence" and (2) "whether an intervening change in controlling law has occurred." *Id.*

instance, Plaintiffs did not have previous reason to brief the potential denial of their request for declaratory relief because the Defendants did not argue for this form of relief in their Motion for Judgment on the Pleadings (Doc. 65). In fact, in that motion Defendants implicitly argued several times that declaratory relief *was* available: *see* Doc. 65 at 4 ("Plaintiffs admit that declaratory relief is available" (not "Plaintiffs *argue*," but "Plaintiffs *admit*")); *id.* at 11 (quoting *Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016) for the proposition "[p]laintiffs cannot seek an injunction against a judicial officer without first seeking a declaratory judgment"); *id.* at 12 (summarizing Defendants' Argument I.A. as, "[Plaintiffs] cannot plead a viable claim for injunctive relief or costs, including attorneys' fees" but not arguing the same as to declaratory relief); *id.* at 14 ("an *injunction* against the County could not require Judge Mack to cease opening court with prayer" but not arguing the same as to declaratory relief) (emphasis added).

Plaintiffs devoted one paragraph in their Response in Opposition to Defendants' Motion for Judgment on the Pleadings (Doc. 75) to note, "[n]othing briefed by the Defendants suggests that they are entitled to judgement on the pleadings or dismissal as to declaratory relief." *See* Doc. 75 at 19–20. Plaintiffs did this because Defendants' requested "judgment on the pleadings against all claims by Plaintiffs," despite not making any affirmative arguments against declaratory relief. Doc. 65 at 16.[2] In reply, Defendants asserted new legal arguments for the first time regarding declaratory relief. But even then, Defendants argued only that "[a] declaratory judgment *against the County* [would be] no more effective than an injunction . . . ." Doc. 77 at 16 (emphasis added). Defendants made no argument that a declaration against Judge Mack's prayer practice would not redress Plaintiffs' injuries when Judge Mack is a party to the lawsuit in his official capacity. Nor could they,

---

[2] Defendants did request the dismissal of "all claims *against the County*" at the end of a one-paragraph argument, *see* Doc. 65 at 13, but the paragraph simply rehashed Montgomery County's arguments against liability under *Monell* and did not at all speak to the availability of declaratory relief where Judge Mack is a separately named defendant in his official capacity. The request also confusingly described the claims against Judge Mack as "subject to judicial immunity," which is not a defense available to a judge sued in his official capacity and is not applicable to a claim for prospective relief. *Cf. Forrester v. White*, 484 U.S. 219, 226–230 (1988) (describing the history and "purposes served by judicial immunity from liability in damages").

for that relief is plainly available, as established in § 1983, and the dismissal of that claim was plainly in error. For the reasons stated below, Plaintiffs' respectfully request reconsideration.

## ARGUMENT

I. **A decision denying the opportunity to seek declaratory relief against a judicial officer for acts taken in his judicial capacity cuts against the plain language of § 1983.**

In its Order and Final Judgment, this Court dismissed, among other claims, a claim against Judge Mack in his official capacity for declaratory relief. Declaratory relief is plainly contemplated against judicial officers under 42 U.S.C. § 1983. "[T]he plain language of § 1983 contemplates a declaratory judgment against judicial officers . . . in their official capacities." *Ward v. City of Norwalk*, 640 Fed.Appx. 462, 467 (6th Cir. 2016). Plaintiffs' claim for declaratory relief against Judge Mack in his official capacity should not have been dismissed for lack of redressability or as redundant with claims against the County. It is a separate request for relief that, if granted, would fully redress Plaintiffs' injuries.

Plaintiffs' claim for declaratory relief against Judge Mack in his official capacity should have been sustained under the reasoning in *Ward*. In *Ward*, the Sixth Circuit addressed claims against defendants including a municipal court judge in his official capacity and a separately named municipality (the City of Norwalk). Despite both the judge and municipality being named defendants, the court distinguished the two when analyzing plaintiffs' claims under *Kentucky v. Graham*. The court treated the official capacity claims against the judge as claims against the municipal court for which the judge worked and then dismissed plaintiffs' claims for money damages because "the Norwalk Municipal Court is considered an arm of the *state* for the purposes of § 1983 [and thus receives Eleventh Amendment immunity from suit]." *Id.* at 464 (emphasis added). After treating the judge as synonymous with the state, not the municipality, the court then went on to consider separately claims for injunctive and declaratory relief against the judge in his official capacity. The court dismissed the claim for injunctive relief, "because the plain language of § 1983 allows suits [against judicial officers] for injunctions only after a litigant has sought a declaratory

judgment," but allowed the claim for declaratory relief, noting, "the plain language of § 1983 contemplates a declaratory judgment against judicial officers . . . in their official capacities." *Id.* at 467.

*Ward* thus demonstrates two related errors by this Court. First, it was erroneous to treat Judge Mack as synonymous with Montgomery County, rather than synonymous with the State of Texas under *Kentucky v. Graham*, this is discussed in Section II. below, and second, it was erroneous not to treat declaratory relief against a judicial officer as a distinct form of relief available against Judge Mack in his official capacity.

In analyzing plaintiffs' claim for declaratory relief against a municipal judge in his official capacity, the Sixth Circuit in *Ward* cited to the Third Circuit's careful analysis of § 1983 in *Brandon E. v. Reynolds*, where the court held that § 1983, as amended by the Federal Courts Improvement Act, "implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate. . . . A review of the legislative history confirms this reading of the amendment." 201 F.3d 194, 197–98 (3d Cir. 2000). In at least four separate cases since the Federal Courts Improvement Act modified the relief available under § 1983 against a judicial officer, the Fifth Circuit has entertained § 1983 claims for declaratory relief against judges. In all four instances, the Fifth Circuit indicated that declaratory relief would be available to the plaintiffs before dismissing the claims for other reasons, all inapplicable to Plaintiffs' claims against Judge Mack. *See Machetta v. Moren*, 726 Fed.Appx. 219, 220 (2018) (implying declaratory relief would have been entertained against two state court judges, but for the *Younger* abstention doctrine, which is inapplicable to the claims against Judge Mack); *Bauer v. Texas*, 341 F.3d 352, 358, n. 5 (5th Cir. 2003) (entertaining declaratory relief claims against "the presiding judge of Probate Court No. 2 of Harris County" "in his official capacity only" and dismissing those claims because the plaintiff could not establish a likelihood of future contact with the court—unlike the attorney-plaintiffs who regularly practice before Judge Mack—and because the plaintiff was making a facial challenge to a statute, which the court explicitly contrasted to other forms of declaratory relief the plaintiff did not seek, like a

declaration involving the judge's conduct in the courtroom); *Modelist v. Miller*, 445 Fed.Appx. 737, 740 n. 1 (5th Cir. 2011) (noting the availability of declaratory relief against judges under § 1983, but dismissing plaintiff's claims as "without factual support"); *Moore v. Texas Court of Criminal Appeals*, 561 Fed.Appx. 427 (5th Cir. 2014) (entertaining declaratory relief claim against nine Texas Court of Criminal Appeals judges and one county judge, but dismissing those claims under the Rooker-Feldman doctrine, which is inapplicable to Plaintiffs' claims against Judge Mack).

All of the Fifth Circuit decisions cited by this Court in finding that Plaintiffs' claims were not redressable are consistent with the reasoning in *Ward* and the Fifth Circuit's acknowledgement that declaratory relief is available against judicial officers sued in their official capacities. Even under this Court's view that Montgomery County is not liable for Judge Mack's courtroom prayer policy—a view that Plaintiffs do not share—Plaintiffs' claim for declaratory relief against Judge Mack in his official capacity should have been sustained. The opinions cited by the Court indicating that claims against a municipality would not redress injuries resulting from judicial acts all hinge on the premise that judicial authority derives from the state. In exercising his judicial authority, Judge Mack acts on behalf of the State of Texas. A claim against Judge Mack in his official capacity is thus synonymous with a claim against the State, *not the County*, in those instances where he is acting as a judge, rather than an administrator.

II. **When exercising his authority as a judge, Judge Mack is necessarily exercising state authority and thus it was improper to dismiss Plaintiffs' claims against Judge Mack as redundant with claims against Montgomery County.**

After dismissing Plaintiffs' claims against Judge Mack in his official capacity as synonymous with claims against Montgomery County under *Kentucky v. Graham*, the court went on to dismiss claims against Montgomery County because it found that the County lacks the power to control the courtroom practices of justices of the peace. In reaching this conclusion, the court looked in part to the Texas Constitution, which establishes the office and jurisdiction of justices of the peace and under which justices of the peace are not removable by a county commissioners court. Of course, the Texas constitution also lists justices of the peace as "county officers." Tex. Const. Art. V, § 24. And as

the Attorney General has noted, "[b]y contrast, article XVI, section 61(b) of the constitution, which provides for commissioners courts to determine whether precinct officers should be paid on a fee or salary basis, indicates that justices of the peace are precinct officers." Tex. Atty. Gen. Op. GA-0651 (Tex. A.G.), 2008 WL 2959637. The Supreme Court of Texas has noted the lack of clarity and consistency in how justices of the peace are treated: "The words 'county officers' are terms very loosely used in our laws, and to them no very well-defined meaning is assigned" and thus, "The fact that justices of the peace may be mentioned in the constitution and statutes as county officers does not show that they were intended to be included by these terms in [every provision]." *Reynolds v. Tarrant Cty.*, 78 Tex. 289, 14 S.W. 580 (Tex. 1890). While the Texas constitutional scheme is murky at best, the Ninth Circuit's approach in analyzing Montana's analogous constitutional scheme provides valuable guidance.

In *Eggar v. City of Livingston*, the Ninth Circuit makes the essential observation that "Officials can act on behalf of more than one government entity." 40 F.3d 312, 315 (9th Cir. 1994) (citing *Owens v. Fulton Cty.*, 877 F.2d 947, 952 (11th Cir. 1989)). In establishing governmental liability, therefore, "The crucial factor is whether under state law the acts in question were performed under the municipality's or the state's authority." *Id.* at 314. The court concluded that a municipal judge's "decisions advising indigents of their rights are not administrative or ministerial acts based on the judge's authority as a local official," but rather, "an exercise of judicial discretion drawn from the authority of the state." *Id.* As a result, the court dismissed claims against the City of Livingston—the only defendant before the court—and advised the plaintiffs that should their constitutional rights be trampled in the future, "a state judge does not enjoy judicial immunity from unconstitutional behavior when the facts are sufficient to grant a party declaratory or injunctive relief against a judge." *Id.* at 317. Plaintiffs in this case attempt to heed that advice by seeking declaratory relief against Judge Mack.

In reaching its conclusion that a municipal judge drew his authority from the state, the Ninth Circuit relied on the Fifth Circuit's reasoning in multiple opinions, including *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) ("a municipal judge acting in his or her judicial capacity to

enforce state law does not act as a municipal official"). *Johnson* in turn cites to *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980), which the court describes as "distinguishing [a] judge's administrative duties, actions pursuant to which may constitute county policy under *Monell,* from [a] judge's judicial function, *in which he or she effectuates state policy* by applying state law." *Johnson*, 958 F.2d at 94 (emphasis added). The Ninth Circuit further cited to *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985), which again cites *Familias Unidas* as establishing the dual nature of judges' official acts, some of which are "executive, legislative, and administrative chores" that "can shape county policy" and some of which encompass "Their judicial function [which] 'may more fairly be characterized as the effectuation of the policy of the State of Texas . . . .'" 760 F.2d at 665 (quoting *Familias Unidas*, 619 F.2d at 404).

The other controlling cases cited by this Court in dismissing Plaintiffs' claims against Montgomery County likewise acknowledge the *judicial nature* of an officer's acts when finding a municipality not liable. In *Burns v. Mayes*, the Fifth Circuit held that even when county officers help carry out the judge's policy, judges acting in their judicial capacity are acting as state officers. 369 Fed.Appx. 526, 531 (5th Cir. 2010) ("[T]he SAP Program is clearly a state judicial policy, not a County policy."). Thus, the court dismissed claims against the county defendant, but treated injunctive and declaratory claims against the judge in his official capacity separately. *Id.* at 530 (upholding dismissal of claims against judge on grounds of mootness, since plaintiff could not establish likelihood of future harm). The court in *Garcia Guevara v. City of Haltom City*, which referenced the *Eggar* court's reasoning, ruled that a city was not liable for wrongful incarceration claims because "The relevant decisions were made, not by a City policymaker, but by a municipal judge acting in his *judicial capacity*." 106 App'x 900, 902 (5th Cir. 2004) (emphasis added). The *Garcia Guevara* court was not presented with claims against the municipal judge in his official capacity. And in *Bigford v. Taylor*, the Fifth Circuit cited to *Familias Unidas* when deciding that a justice of the peace "was charged with carrying out Texas's policy" and thus his "'deliberate or mistaken departure from the controlling law' cannot be said to represent county policy." 834 F.2d 1213, 1222 (5th Cir. 1988).

The conclusion that Montgomery County lacks any authority to control Judge Mack's practice of opening court with prayer necessarily means that Judge Mack acted pursuant to his judicial authority, which he derives from the State. Thus, under this Court's reasoning, Judge Mack is not synonymous with the County, but with the State under *Kentucky v. Graham* and should not have been dismissed as a redundant party.

### III. When declaratory relief is separately considered, it is clear that a court-issued declaration would redress Plaintiffs' injuries.

When Judge Mack is properly viewed as a distinct party from Montgomery County, it is clear that a court-issued declaration that Judge Mack's courtroom prayer practice is unconstitutional would redress the Plaintiffs' injuries. First, regardless of whether Montgomery County can control the courtroom practices of Judge Mack, Judge Mack himself *can* control those practices. Courts can and must assume that government officials will heed a court-issued declaration and adjust their conduct accordingly. *See, e.g., Roe v. Wade*, 410 U.S. 113, 166 (1973) (finding it unnecessary to decide whether the district court erred in withholding injunctive relief, "for we assume the Texas prosecutorial authorities will give full credence to this decision [issuing declaratory relief] that the present criminal abortion statutes of that State are unconstitutional"); *Doe v. Bolton*, 410 U.S. 179, 201 (1973) (affirming declaratory relief but denying injunctive relief for same reasoning); *Alsager v. Dist. Ct. of Polk Cty*. 518 F.2d 1160 (8th Cir. 1975) ("[T]he mere fact that declaratory relief does not provide a coercive remedy is no reason to conclude that it will be ineffective. We must and do assume that the defendant state and county authorities would give full credence to a finding that the challenged [statute and conduct] were unconstitutional and would act accordingly.").

Second, even if a court-issued declaration was not given its due credence by Judge Mack, a declaratory judgment can "be used as a predicate to further relief, including an injunction." *Powell v. McCormack*, 395 U.S. 486, 499 (1969) (citing 42 U.S.C. § 2202). In addition to seeking an injunction, in this instance a court-issued declaration would also open the additional avenue of allowing for an enforcement action by the State Commission on Judicial Conduct, which previously decided that it lacked the authority to discipline Judge Mack for his courtroom prayer practice solely because it

lacked the authority to decide the constitutionality of that practice. *See* Plaintiffs' First Amended Complaint ¶ 41. For these reasons, Plaintiffs seek the opportunity to pursue their declaratory relief claim against Judge Mack in his capacity as a government official.

**PROPOSED REMEDY**

From the outset, this lawsuit was an action against Judge Mack in his official capacity. Plaintiffs' original Complaint (Doc. 1) listed only Judge Mack as a defendant and Judge Mack remained a separate and distinct party to the lawsuit when Plaintiffs filed their First Amended Complaint (Doc. 22). Though there was some initial confusion over the appearances entered by First Liberty and Gibson Dunn on behalf of Judge Mack, *see* Plaintiffs Opposed Motion for Miscellaneous Relief (Doc. 48) at 1–2 (summarizing the confusion), it has since become sufficiently clear that counsel for the Defendants represent both Montgomery County and also Judge Mack in his official capacity. *Id.* at 2; Defendants' Motion for Judgment on the Pleadings (Doc. 65) at 4 (advancing arguments available to a judicial officer that are not available to a municipality, such as the "statutory immunity provisions" in 42 U.S.C. §§ 1983 and 1988(b)). While Plaintiffs have advanced arguments that Judge Mack is exercising administrative (*i.e.* County) authority in developing his courtroom prayer practice, counsel for the Defendants has advanced a theory, accepted by this Court, that Judge Mack is exercising judicial (*i.e.* State) authority. The liability of the County turns on this distinction, but the liability of Judge Mack in his official capacity does not.

It appears that the State of Texas agrees with Plaintiffs that Judge Mack is not exercising state authority in the development and execution of his courtroom prayer practice. After Plaintiffs sued Judge Mack, rather than entering an appearance on his behalf, the Office of the Attorney General attempted to intervene in the case on behalf of a separate state agency, the Texas Commission on Law Enforcement. *See* Motion to Intervene (Doc. 15). Even after Plaintiffs clarified on October 5, 2017 that they brought only official capacity claims against Judge Mack, *see* Doc. 41, the State, by and through the Attorney General, submitted on December 22, 2017, a Motion for Leave to File Brief as *Amicus Curiae* in Support of Defendants (Doc. 44), once again indicating that

it did not consider Judge Mack to be a state agent whom the Attorney General would be obligated to represent. *See* Government Code § 402.0212.

This Court need not speculate as to the State's position. In order to resolve the dispute over whose governmental authority Judge Mack exercised when developing and implementing his courtroom prayer practice, while preserving the considerable work this Court and the current parties have done in arguing the case, Plaintiffs request that this Court temporarily suspend its September 27, 2018 Memorandum and Order (Doc. 88) and accompanying Final Judgement (Doc. 89) and allow the State to enter a separate appearance on behalf of Judge Mack in his official capacity. Plaintiffs shall serve the State to ensure a timely appearance. The State would be called upon solely to defend against Plaintiffs' claim under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 for declaratory relief against Judge Mack in his official capacity, a claim which, under this Court's reasoning, is synonymous with a claim against the State. After the State has filed its answer or otherwise briefed its position, the Court may then reinstate the parts of its Memorandum and Order that apply to Montgomery County as part of a consolidated final judgment.

In the alternative, if the Court does not believe that Plaintiffs' proposed remedy will adequately address the concerns raised in this memorandum, then Plaintiffs request that the Memorandum and Order and accompanying Final Judgement be withdrawn and Plaintiffs be granted leave to amend their complaint.

Respectfully submitted this 25 day of October 2018.

/s/ Sam Grover
Sam Grover
Wisconsin State Bar No. 1096047
Elizabeth Cavell
Wisconsin State Bar No. 1089353
(pro hac vice)
FREEDOM FROM RELIGION FOUND., INC.
P. O. Box 750
Madison, WI 53701
Telephone: 608-256-8900
Telecopier: 608-204-0422
Email: sgrover@ffrf.org / ecavell@ffrf.org

>Patrick A. Luff
>Attorney-in-charge
>Texas State Bar No. 24092728
>S.D. Tex. Bar No. 2896159
>LUFF LAW FIRM, PLLC
>3123 NW Loop 410
>San Antonio, TX 78230
>Telephone: 210-504-7575
>Telecopier: 830-584-0628
>Email: luff@lufflaw.com

*Attorneys for the plaintiffs*

## CERTIFICATE OF SERVICE

I, Sam Grover, hereby certify that on this the 25 day of October 2018, a true and correct copy of the foregoing document was transmitted using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

>*/s/ Sam Grover*
>Sam Grover