UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., JANE DOE, and JOHN ROE, §§§§§ *Plaintiffs*, § § v. § § § JUDGE WAYNE MACK, in his official § capacity as Justice of the Peace, and § MONTGOMERY COUNTY, TEXAS, § *Defendants*. § | Civil Action No. 4:17-cv-881 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO AMEND THE COURT'S SEPTEMBER 27, 2018 MEMORANDUM AND ORDER, AND FINAL JUDGMENT**

Plaintiffs style their recent Motion as one "to Amend the Court's September 27, 2018 Memorandum and Order, and Final Judgment." (Dkt. No. 90, the "Motion.") But they should have instead called it a "Motion to Escape the Consequences of Plaintiffs' Own Strategic Choices." Those choices, from the outset, have dictated Plaintiffs' inability to obtain redress. Plaintiffs *chose* to sue Judge Mack only in his official capacity, "with the understanding that that was simply another way of suing Montgomery County." (*See* Plaintiffs' Response to June 22 Order, Dkt. No. 86 at 1.) And that choice led the Court to dismiss this lawsuit because relief against the County would not redress Plaintiffs' alleged injuries. (*See* Sept. 27, 2018 Memorandum and Order ("Dismissal Order"), Dkt. No. 88 at 15.) The dismissal order, therefore, rejects the central premise of Plaintiffs' claims—that the County was the appropriate entity to sue for Judge Mack's decision to open his judicial proceedings with prayer.

Before dismissing Plaintiffs' claims, however, the Court offered them a chance to restructure this lawsuit and name a different entity as a defendant. (*See* June 22 Order, Dkt. No. 85 at 3 (requiring Plaintiffs to identify "whether their claim against Judge Mack in his official

capacity is a claim against any government entity other than Montgomery County" and, if so, to show service on that entity).) But they again *chose* not to "identify any other government entity synonymous with Judge Mack in his official capacity," and to insist instead that "Montgomery County has the ultimate authority to redress the harms caused to them." (Response to June 22 Order, Dkt. No. 86 at 1–2.) The Court had warned Plaintiffs that this choice would result in Judge Mack's dismissal as a redundant party. (*See* June 22 Order, Dkt. No. 85 at 3.) True to that warning, the Court correctly dismissed the official-capacity claims against Judge Mack when it also dismissed Plaintiffs' claims against the County. (Dismissal Order at 3–4.)

Now, despite having multiple opportunities to establish their standing to bring this lawsuit—*seven different briefs* addressed the redressability question[1]—and despite declining this Court's prior invitation to add the State or some other governmental entity as a defendant, Plaintiffs try to use a Rule 59(e) motion to name the State of Texas as a defendant. But Rule 59(e) is not a proper vehicle for exhuming old arguments and leveling them against new defendants in an attempt to revive a dismissed lawsuit. Nor is it an opportunity to revisit calculated strategic choices gone awry. Besides, nothing in the Motion undermines the correctness of the Court's conclusion that Plaintiffs lack standing to sue Defendants. Because Plaintiffs' Motion does not satisfy Rule 59(e)'s exacting standards, the Court should deny it.

## STANDARD OF REVIEW

The relief that Plaintiffs request is disfavored. Rule 59(e)'s standard instead "favor[s] the denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2

---

[1] *See* Defendants' Motion for Judgment on the Pleadings, Dkt. No. 65; Plaintiffs' Response to Defendants' Motion for Judgment on the Pleadings Dkt. No. 75; Defendants' Reply in Support, Dkt. No. 77; Notice of Relevant Authority Dkt. No. 83; Plaintiffs' Response Regarding Defendants' Notice of Relevant Authority Dkt. No. 84; Plaintiffs' Response to the Court's June 22, 2018 Order Dkt. No. 86; Reply to Plaintiffs' Response to the Court's June 22, 2018 Order, Dkt. No. 87.

F.3d 606, 611 (5th Cir. 1993); *see Alvarado v. Tex. Rangers*, No. EP-03-CA-0305-FM, 2005 WL 1420846, at *1 (W.D. Tex. June 14, 2005) ("[O]ur Circuit disfavors granting a Rule 59(e) motion to alter or amend judgment."). As a result, the Court should grant the Motion only "[u]nder extraordinary circumstances." *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 847–48 (5th Cir. 2006); *see Hawkins v. Colvin*, No. 2:16-CV-271, 2018 WL 4214167, at *2 (S.D. Tex. June 12, 2018), *report and recommendation adopted*, 2:16-CV-271, 2018 WL 4211363 (Sept. 4 2018) (Rule 59(e) creates "an extraordinary remedy that should not be used often"). The sorts of extraordinary circumstances that a Rule 59(e) movant must show are: (1) an intervening change in controlling law; (2) the availability of new evidence previously unavailable to the movant; or (3) the need to correct a clear error of law or prevent manifest injustice. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002); *Hoog-Watson v. Allenger*, No. SA-06-CV-00728-WRF, 2007 WL 9710644, at *1 (W.D. Tex. Dec. 19, 2007).

Plaintiffs identify no "clear error" or "manifest injustice" created by the Court's Dismissal Order. (*See* Motion at 2–3.) They merely revisit a question that the Court has already answered in the negative: whether Plaintiffs have standing to bring this lawsuit as they have chosen to structure it. That is not why Rule 59(e) exists. *See, e.g.*, *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) ("[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."). Nor does it exist to add new claims to a lawsuit, whether against the same or new parties, the other aim of Plaintiffs' Motion. *See Sentry Select Ins. Co. v. Home State Cty. Mut. Ins. Co.*, 582 F. App'x 284, 287 (5th Cir. 2014) (affirming denial of Rule 59(e) motion because "[n]ew claims generally mean a new lawsuit, even if those claims are between the same parties to a prior lawsuit"). Because Plaintiffs "merely express[] [their] disagreement with the court's application of the

controlling law to the particular facts of this case," *Butler v. Davis*, No. H-07-2103, 2018 WL 542274, at *2 (S.D. Tex. Jan. 23, 2018), the Court should deny the Motion.

## ARGUMENT

### I. Prior to judgment, Plaintiffs could have raised—but repeatedly chose not to raise—the arguments in their Motion.

Plaintiffs have framed their Motion around the alleged prejudice they will face if Judge Mack is dismissed as a litigant. They argue primarily that because statutory provisions of 42 U.S.C. § 1983 provide that declaratory relief is available against judicial officers even when injunctive relief is not, that they should be able to name the State as a target entity and avoid dismissal of Judge Mack from the lawsuit. (*See* Motion at 4–6 (relying on *Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016).) But the availability of declaratory relief as a *general matter* under § 1983 against judges acting in their judicial capacity does not necessarily mean that such relief would redress the *particular* injuries alleged by Plaintiffs in this case. They still must demonstrate the "irreducible constitutional minimum of standing"—including redressability—which the Court already ruled they have not done. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). (*See* Dismissal Order at 14–15 (ruling that "the County did not cause Plaintiffs' injury and a judgment against the County would not redress Plaintiffs' injury").)

Along with merely presuming—instead of demonstrating—Plaintiffs' standing, none of the Motion's arguments about "the plain language of § 1983" (Motion at 4) can satisfy Rule 59(e)'s standard. All of these arguments "could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479.

At multiple procedural junctures prior to judgment, Plaintiffs could have made the arguments they now bring in the Motion. When they opposed Defendants' Rule 12(c) motion for judgment on the pleadings, nothing barred them from arguing that, because the Court should "treat

Judge Mack as synonymous with Montgomery County, rather than synonymous with the State of Texas," they had satisfied the redressability requirement. (Motion at 5; *see id.* at 6.) Indeed, after briefing had closed on Defendants' Rule 12(c) motion—but before entering judgment against Plaintiffs—the Court gave Plaintiffs a renewed opportunity to make their current arguments. (*See* June 22 Order, Dkt. No. 85 at 3 (ordering Plaintiffs to "file a response stating whether their claim against Judge Mack in his official capacity is a claim against any other government entity other than Montgomery County").) But they still "primarily argue[d] that Montgomery County has the ultimate authority to redress the harms caused." (Response to June 22 Order, Dkt. No. 86 at 2).

Plaintiffs chose to "not identify any other government entity synonymous with Judge Mack in his official capacity" (*id.* at 1), and the Court had already made clear what consequences would follow from that choice: "If no such other entity subject to suit is so identified by Plaintiffs, then Plaintiffs' claim against Judge Mack in his official capacity will be dismissed as redundant with their claim against Montgomery County." (June 22 Order, Dkt. No. 85 at 3.) It was thus no surprise when the Court said that "Plaintiffs' claims against Judge Mack in his official capacity [were] therefore dismissed as redundant." (Dismissal Order at 3–4.) And Plaintiffs have known all along that the County sought dismissal of "all claims" in the complaint—including those for declaratory relief. (*See* Rule 12(c) Motion, Dkt. No. 65 at 16 ("Defendants respectfully request that the Court grant them judgment on the pleadings against all claims by Plaintiffs or, alternatively, that the Court dismiss all claims with prejudice for lack of subject-matter jurisdiction.").) Plaintiffs cannot seriously argue that they "did not have previous reason to brief the potential denial of their request for declaratory relief" against Judge Mack in his official capacity; which is to say, against Montgomery County. (Motion at 3.)

Plaintiffs' asserted failure to grasp the scope of the relief so plainly sought by Defendants' Rule 12(c) motion is no reason to save them from the consequences of their own strategic decisions, including their choice not to sue Judge Mack in his individual capacity and not to add the State as a defendant when this Court gave them the chance. In short, the Motion fails to clear Rule 59(e)'s standard because all of Plaintiffs' arguments in it "could, *and should*, have been made before the judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (emphasis added).

## II.   The Motion rehashes arguments this Court has already considered.

Worse than just focusing on points that *could have been raised* before the Court's judgment, the Motion also offers the Court a number of warmed-over arguments that were *in fact already raised* in the prior briefing on these issues. *See Templet*, 367 F.3d at 479 (clarifying that Rule 59(e) motions are "not the proper vehicle for rehashing . . . legal theories"). The Motion covers essentially no new ground, for example:

**DUPLICATIVE ISSUES AND ARGUMENTS**

| 59(e) Argument | Overlap with Prior Briefing |
|---|---|
| • "A decision denying the opportunity to seek declaratory relief against a judicial officer for acts taken in his judicial capacity cuts against the plain language of § 1983." <br><br>(Motion at 4; *see id.* at 1, 4–6.) | • "Plaintiffs also seek declaratory relief, which is explicitly allowed by statute." <br><br>(Response to Rule 12(c) Motion, Dkt. No. 75 at 19.) |
| • If the County "lacks any authority to control Judge Mack's practice of opening court with prayer," then this "necessarily means that Judge Mack acted pursuant to his judicial authority." <br><br>(Motion at 9; *see id.* at 6–9.) | • "[I]t would be erroneous to treat Judge Mack in his official capacity as a redundant party while still entertaining arguments that Montgomery County does not bear ultimate responsibility" for his actions. <br><br>(Response to Rule 12(c) Motion, Dkt. No. 75 at 20.) |

## DUPLICATIVE ISSUES AND ARGUMENTS

| 59(e) Argument | Overlap with Prior Briefing |
|---|---|
| • Suit against Judge Mack in his official capacity will redress Plaintiffs' injuries.<br><br>(*See* Motion at 9–10.) | • "Plaintiffs' claims are redressable—Plaintiffs have sued two distinct defendants and one of them, at least, is the final policymaker for the Precinct 1 court."<br><br>(Response to Rule 12(c) Motion, Dkt. No. 75 at 20.) |
| • "From the outset, this lawsuit was an action against Judge Mack in his official capacity," so Plaintiffs have standing to bring their claims.<br><br>(Motion at 10.) | • "Plaintiffs have sued Judge Mack in his official capacity. Plaintiffs have thus sued the entity with ultimate authority to bind Judge Mack."<br><br>(Response to Notice of Authority, Dkt. No. 84 at 1.)<br><br>• "From the outset, Plaintiffs sued Judge Mack in his official capacity, with the understanding that that was simply another way of suing Montgomery County."<br><br>• "Plaintiffs do not identify any other government entity synonymous with Judge Mack in his official capacity."<br><br>(Response to June 22 Order, Dkt. No. 86 at 1.) |

As this chart demonstrates, the Motion fails to raise any truly new or previously unavailable arguments. It is a reiteration of the arguments that Plaintiffs already plowed thoroughly in response to Defendants' Rule 12(c) motion and this Court's order that Plaintiffs clarify whom they intended to sue. They suggest that, prior to judgment, they had no reason to make their current arguments about whether "Judge Mack is not synonymous with the County, but with the State." (Motion at 9.) But the lack of County control over Judge Mack was the central issue that led the Court to dismiss on redressability grounds. (*See, e.g.*, Rule 12(c) Motion, Dkt. No. 65 at 14 ("[T]he County has no power to stop the opening ceremony to which Plaintiffs object.").) The centerpiece of Plaintiffs' Rule 59(e) Motion was, therefore, already fully briefed by both parties and ruled on by the Court. Because of that, the Court should deny the Motion. *See Templet*, 367 F.3d at 479.

**III.     The Motion does not establish any clear error or manifest injustice—indeed, establishes no error at all—in this Court's decision to dismiss Plaintiffs' lawsuit.**

Plaintiffs raised all the arguments in the Motion prior to judgment, or at the very least could have raised them.  The Court can deny the Motion for those reasons without proceeding to the substance of Plaintiffs' arguments.  But should the Court choose to plow ahead, it will see that Plaintiffs' arguments also lack substantive merit.  The Motion does not show that the Court committed any legal error whatsoever—let alone one serious enough to justify reconsideration under Rule 59(e).  *See In re Benjamin Moore & Co.*, 318 F.3d at 629.  Nothing in the Motion persuasively argues that the Court's redressability ruling was wrong.  Worse still, by seeking to belatedly add the State as a defendant, Plaintiffs have effectively conceded that relief against the County would not redress their alleged injuries.  The Court should therefore deny the Motion.

**A.     The Motion does not establish any error in the Court's dismissal of the County on redressability grounds.**

As this Court has recognized repeatedly throughout this lawsuit, Plaintiffs' official-capacity claims against Judge Mack were brought as a means to sue Montgomery County.  (*See, e.g.*, Jan. 19, 2018 Memorandum and Order, Dkt. No. 52 ("MTD Order") at 7 (finding that Plaintiffs' official capacity claims "are merely another way of stating their claims against the County."); *see also* June 22 Order, Dkt. No. 85 at 3.)  In fact, Plaintiffs have admitted that they had always considered those claims as a tool for suing the County.  (Response to June 22 Order, Dkt. No. 86 at 1.)  Now, only after learning that their lawsuit had failed, Plaintiffs argue for the first time that the Court's conclusion is incorrect.  Plaintiffs have suddenly decided that they did not mean to use their official-capacity claims to sue the County after all but were aiming for the State all along.  (*See* Motion at 6.)

Besides the obvious inconsistency of this new position with Plaintiffs' prior representations, the Court has correctly recognized that official-capacity claims against a justice

of the peace are treated as claims against the county. (*See* MTD Order at 7 (citing *Tinoco v. Raleeh*, No. 4:05CV367, 2006 WL 27287, at *2 (E.D. Tex. Jan. 5, 2006), which treated a plaintiff's discrimination claim under § 1983 "brought against [a justice of the peace] in his official capacity . . . as though properly brought against Collin County").) The Court has also recognized that, when acting in a judicial capacity, justices of the peace are not local government officials whose actions are attributable to the county. (*See* Dismissal Order at 12–13 (recognizing that "the distinction between a judge's administrative and judicial duties . . . is often critical to determinations of judicial immunity and municipal liability").) This conclusion follows from longstanding Fifth Circuit precedent. *See Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995) ("A local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the county.").

Taken together, these principles suggest that Plaintiffs should have pursued their claims against Judge Mack in his individual capacity instead of choosing to sue the County via official-capacity claims. They do not, as Plaintiffs argue, establish that this Court clearly erred or committed a manifest injustice by ruling that Plaintiffs had failed to demonstrate their standing to pursue declaratory relief against Judge Mack in his official capacity. (*See* Motion at 4–6.) In many of the cases cited by Plaintiffs, the Fifth Circuit simply held that the specific facts presented did not allow declaratory relief against the judicial officer in question. *See Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018) (holding that state court would be the proper forum for family-law declaratory judgment action against two judges); *Moore v. Tex. Ct. of Criminal Appeals*, 561 F. App'x 427, 430 (5th Cir. 2014) (holding that *Rooker–Feldman* doctrine barred declaratory relief against Texas Court of Criminal Appeals); *Modelist v. Miller*, 445 F. App'x 737, 740 n.1 (5th Cir. 2011) (rejecting declaratory-judgment claim because plaintiff's "assertions of

conspiracy [were] without factual support"); *Bauer v. Texas*, 341 F.3d 352, 361 (5th Cir. 2003) (finding that plaintiff's interests were not in fact adverse to judge's own interests and thus plaintiff had no standing to seek declaratory relief against judge). Plaintiffs do not explain how the factually specific decisions in those cases require any particular result on the facts presented in this case.[2]

The only thing that those cases show is that, even though § 1983 does not categorically prohibit declaratory relief against judicial officers acting in their judicial capacity, declaratory relief is not necessarily available in every particular case. The Sixth Circuit made this clear in *Ward v. City of Norwalk*, where it held that, although judges are not statutorily immune from declaratory judgments, other doctrines might defeat a declaratory-judgment action against a judge. For example, when plaintiffs seek declaratory judgments against judges for actions taken in a judicial capacity, such plaintiffs still must demonstrate the justiciability of their claims. *See Ward*, 640 F. App'x at 468 ("Article III's case-or-controversy requirement, moreover, operates to ensure that declaratory relief is available only when a live controversy continues to exist.").

The Motion still does not demonstrate the justiciability of Plaintiffs' claims. Plaintiffs never show how the relief they seek would redress their alleged injuries. They acknowledge that, "regardless of whether Montgomery County can control the courtroom practices of Judge Mack, Judge Mack himself *can* control those practices." (Motion at 9.) If they had sought declaratory

---

[2] Nor do they explain the relevance of *Eggar v. City of Livingston* to the redressability analysis in this case. There the Ninth Circuit held that a judge did not act on behalf of a city for purposes of *Monell* liability. 40 F.3d 312, 315–16 (9th Cir. 1994). In that case, like so many in the Fifth Circuit and elsewhere, the Ninth Circuit held that the city did not control the judge and was thus not liable for his actions taken in a judicial capacity. *Id.*; *see, e.g.*, *Garcia Guevara v. City of Haltom City*, 106 F. App'x 900, 902 (5th Cir. 2004) ("Because the municipality did not have the power to control the municipal judge's actions, however, it also did not have the power to ratify them."). While this line of precedent certainly would provide the Court an alternative ground for dismissing Plaintiffs' lawsuit, it has no bearing on the redressability question that is central to the Motion.

**DEFENDANTS' RESPONSE TO**
**PLAINTIFFS' MOTION TO AMEND** Page 10

relief against Judge Mack in his individual capacity, then the Court of course would need to "assume that [he] will heed a court-issued declaration." (*Id.*) But they did not, nor do they now seek to bring any new claims against Judge Mack. (*See id.* at 10–11.) Instead Plaintiffs request to add the State as a defendant without explaining how relief against the State, any more than relief against the County, would redress their alleged injuries. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (en banc) (dismissing lawsuit against state and state officials because they had "no power to redress the asserted injuries"); *see also Ward*, 640 F. App'x at 464 (treating claims against a municipal judge as claims against the municipal court as an entity). Plaintiffs beg the question by assuming that—simply because the County cannot control Judge Mack—the State is the right target for suit.

This Court already ruled that Plaintiffs had no redress against the County, which lacked control over Judge Mack's procedures for opening court. (*See* Dismissal Order at 7–8.) In their scramble to chalk his actions up to the State, Plaintiffs do not explain how the State has any more control over Judge Mack's opening procedures than does the County.

All of this is not to say that Plaintiffs are left without remedy against Judge Mack if his actions were illegal. As the County has previously explained (*see* Rule 12(c) Motion, Dkt. No. 65 at 1, 16), Plaintiffs' remedy against Judge Mack, if they were entitled to one, would lie in the disciplinary procedures created by state law, not in federal court. *See* Tex. Const. art. V, § 1-a(6)(A) (establishing that Texas state-court judges may only be "be disciplined or censured" by the Texas Commission on Judicial Misconduct). Plaintiffs have already unsuccessfully pursued that remedy; their lack of success in that state-disciplinary proceeding does not guarantee them standing to bring this federal lawsuit—whether against the State or the County. *Cf. Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (barring federal lawsuits "brought by

state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

Moreover, the precedent discussed earlier suggests that Plaintiffs could bring a potentially viable claim for declaratory relief against Judge Mack in his individual capacity. But they have repeatedly chosen not to. Plaintiffs may now regret that choice, but that is no reason to grant them the extraordinary relief they request under Rule 59(e).

> **B.** **By seeking to add the State to this lawsuit, Plaintiffs concede that relief against the County would not redress their injuries.**

Whether or not Plaintiffs have standing to sue Judge Mack in his individual capacity or to sue the State for Judge Mack's actions taken in a judicial capacity, the Motion leaves no doubt about a different point: The County does not belong in this lawsuit. Attempting to salvage this lawsuit by reframing Plaintiffs' official-capacity claims against Judge Mack as claims against the State, the Motion would fundamentally change the nature of this lawsuit—taking claims against the County and turning them into claims against the State. *See Sentry Select Ins. Co.*, 582 F. App'x at 287 (remarking in Rule 59(e) context that "[n]ew claims generally mean a new lawsuit"). Beyond the procedural impropriety of this maneuver, *see supra* Parts I–II, it also amounts to a concession by Plaintiffs that the Court correctly dismissed the case against the County.

The Motion is riddled with explicit references to Plaintiffs' new position that the County cannot face liability for Plaintiffs' official-capacity claims:

- Because "Judge Mack acts on behalf of the State of Texas," it follows that a "claim against Judge Mack in his official capacity is thus synonymous with a claim against the State, *not the County*." (Motion at 6 (emphasis added).)

- The Court supposedly erred by choosing "to treat Judge Mack as synonymous with Montgomery County, rather than synonymous with the State of Texas under *Kentucky v. Graham*." (*Id.* at 5.)

- "While Plaintiffs have advanced arguments that Judge Mack is exercising administrative (*i.e.* County) authority in developing his courtroom prayer practice, counsel for the Defendants has advanced a theory, accepted by this Court, that Judge Mack is exercising judicial (*i.e.* State) authority. The liability of the County turns on this distinction, but the liability of Judge Mack in his official capacity does not." (*Id.* at 10.)

- "[R]egardless of whether Montgomery County can control the courtroom practices of Judge Mack, Judge Mack himself *can* control those practices." (*Id.* at 9.)

Along with these explicit references to the County's lack of responsibility for Judge Mack's actions, Plaintiffs have dropped their arguments that relief against the County would redress their alleged injuries. For example, in the "Proposed Remedy" portion of their Motion, Plaintiffs seek declaratory relief only against the State and do not ask this Court to reconsider its decision to dismiss the County on redressability grounds. According to Plaintiffs, "[t]he State would be called upon solely to defend against Plaintiffs' claim . . . for declaratory relief against Judge Mack in his official capacity," which they argue, "under this Court's reasoning, is synonymous with a claim against the State." (*Id.* at 11.) Plaintiffs do not ask the Court to reconsider "the parts of its Memorandum and Order that apply to Montgomery County." (*Id.*) In fact, they would allow for the reinstatement of those portions "as part of a consolidated final judgment." (*Id.*) Reinstating that judgment would mean dismissing the County for lack of redressability.

In this way, the Motion certainly fails the task that Rule 59(e) demands: to demonstrate that the Court's redressability ruling was such "a clear error of law" that it must be corrected to "prevent manifest injustice." *Hoog-Watson*, 2007 WL 9710644, at *1. But the situation for Plaintiffs is worse than that. By asking the Court to correct their own calculated choices and allow them to turn this into a lawsuit against the State instead of the County, Plaintiffs affirmatively demonstrate that the Court's reasons for dismissal were correct all along. Whether or not a declaratory judgment against the State might redress their claims, Plaintiffs have essentially conceded that one against the County would not.

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO AMEND** Page 13

## CONCLUSION

For the foregoing reasons, the County urges the Court to stand by its correct decision issued in its September 27, 2018 Memorandum and Order, and deny Plaintiffs' Motion.

Dated: November 15, 2018

Respectfully submitted,

| | |
|---|---|
| **J.D. LAMBRIGHT,**<br>**COUNTY ATTORNEY** | **BAKER BOTTS L.L.P.** |
| | By: /s/ *Amy Pharr Hefley* |
| B.D. Griffin<br>Assistant County Attorney<br>Texas Bar No. 08468500<br>S.D. Texas Bar No. 1862<br>Adam Anderson<br>Texas Bar No. 24090780<br>S.D. Texas Bar No. 2914958<br>501 North Thompson, Suite 300<br>Conroe, TX 77301<br>(936) 539-7828<br>(936) 760-6920 (facsimile)<br>bd.griffin@mctx.org<br>adam.anderson@mctx.org | Aaron M. Streett<br>Texas Bar No. 24037561<br>S.D. Texas Bar No. 732596<br>Amy Pharr Hefley<br>Texas Bar No. 24046046<br>Nischay Bhan<br>Texas Bar No. 24105468<br>S.D. Texas Bar No. 3151238<br>One Shell Plaza<br>910 Louisiana St.<br>Houston, TX 77002<br>(713) 229-1234<br>(713) 229-1522 (facsimile)<br>aaron.streett@bakerbotts.com<br>amy.hefley@bakerbotts.com<br>nischay.bhan@bakerbotts.com |
| | Vincent M. Wagner<br>Texas Bar No. 24093314<br>S.D. Texas Bar No. 3162395<br>2001 Ross Avenue, Suite 900<br>Dallas, TX 75201<br>(214) 953-6000<br>(214) 661-6503 (facsimile)<br>vincent.wagner@bakerbotts.com |
| | COUNSEL FOR DEFENDANTS |

## CERTIFICATE OF SERVICE

I certify that this document was filed with the Court's Electronic Filing System, which will serve all known Filing Users, on November 15, 2018.

/s/ *Amy Pharr Hefley*
Amy Pharr Hefley